In re HAWLEY DOWN–DRAFT FURNACE CO.

NATIONAL TRUST & CREDIT CO. v. CHIDSEY.

(Circuit Court of Appeals, Third Circuit.   December 15, 1916.)

No. 2149.

1. ASSIGNMENTS ⬅═86—RIGHT OF ATTACHING CREDITOR.

Where the bankrupt conveyed to petitioner certain of its accounts, receiving a substantial payment thereon, and petitioner made the bankrupt its agent for collection, creditors of the bankrupt could not, under the Pennsylvania law, levy upon the proceeds received on collection of the account, for the levy could be made only under attachment execution, and creditors could not acquire any greater rights than those of the bankrupt.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. §§ 152–154; Dec. Dig. ⬅═86.]

2. BANKRUPTCY ⬅═172—RIGHTS OF TRUSTEE—STATUTE.

Under Bankr. Act July 1, 1898, c. 541, § 47, 30 Stat. 557, as amended by Act June 25, 1910, c. 412, § 8, 36 Stat. 840 (Comp. St. 1913, § 9631), declaring that the trustee, as to all property in the custody or coming into the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a creditor holding a lien by legal proceedings thereon, and also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with the rights, remedies, and powers of a judgment creditor holding an execution returned unsatisfied, the trustee of the bankrupt corporation cannot, as against petitioner, who purchased accounts payable to the corporation, deny petitioner's right to collections made by the corporation as petitioner's agent, where, under the state laws, such moneys could not be levied on by the bankrupt's creditors.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 220;   Dec. Dig. ⬅═172.]

3. ASSIGNMENTS ⬅═57—VALIDITY—NOTICE TO DEBTORS.

Where a bankrupt transferred to a third person accounts due from debtors, the validity of such transfer as between the parties is not affected because the several debtors were not notified.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. §§ 116–120; Dec. Dig. ⬅═57.]

4. BANKRUPTCY ⬅═440—PROCEEDINGS TO REVIEW—PETITION TO REVISE.

Where the facts were not in dispute, but the decision in a controversy arising in bankruptcy depended upon a question of law, the matter should be reviewed by petition to revise.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 915;   Dec. Dig. ⬅═440.]

Petition to Revise and Review Order of the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

In the matter of the bankruptcy of the Hawley Down-Draft Furnace Company.   The petition of the National Trust & Credit Company for delivery of a particular fund, opposed by A. D. Chidsey, trustee of the estate of the bankrupt, was denied by the District Court, and petitioner files petition to revise.   Order reversed.

See, also, 233 Fed. 451.

⬅═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

John W. Creekmur, of Chicago, Ill., for petitioner.

Edward J. Fox, of Easton, Pa., for respondent.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

BUFFINGTON, Circuit Judge. This is a petition to revise and review an order in bankruptcy made by the court below which reversed a referee's order. Referring to the proceeds of certain accounts in the hands of the trustee in bankruptcy, the order of the referee was:

"There being no insolvency, no fraud, and no usury, and no intent to create a preference, the transfer should be declared valid, and the trustee directed to turn over the 'ear-marked' fund which reached him, viz. $4,138.79."

On review of such order the decree of the court below was:

"And now, July 25, 1916, the order of the referee in bankruptcy in the above matter awarding the fund of $4,138.79 to the National Trust & Credit Company is vacated and reversed in accordance with the opinion of this court filed March 7, 1916, and the petition of the National Trust & Credit Company for the allowance of said claim is hereby dismissed."

Confining ourselves to the facts pertinent to the present question we note that on May 19, 1910, the National Trust & Credit Company, an Illinois corporation engaged in the business of buying open, active book accounts, contracted with the Hawley Down-Draft Company to purchase on terms stipulated, such of the latter's acceptable accounts receivable as were tendered it for purchase. By this contract the Down-Draft Company was made agent of the Trust Company to collect such purchased accounts and to transmit to it the proceeds. Under this contract purchases of accounts were made and the same collected and remitted until July 20, 1912, when a change of officers of the Down-Draft Company took place. Thereafter the new officers of the latter company collected the then remaining transferred accounts and retained the proceeds thereof in a separate bank account which amounted in August, 1912, when a receiver was appointed for the Down-Draft Company by the state court, to $4,431.75. The Down-Draft Company having been later adjudged a bankrupt, this fund was paid to its receiver in bankruptcy. Thereupon the National Trust & Credit Company petitioned the court in bankruptcy to order its receiver to pay to it the same. After hearing the parties, and finding no insolvency, fraud, usury, or attempt to create a preference were involved, the referee to whom the matter had been referred upheld the transfer of the accounts, and directed the trustee, by the order above recited, to pay the fund to the Credit Company. The court below reversed the referee's order. It adopted his findings as above stated, but made an additional one, and stated its views of the question before it as follows:

"The findings of the referee have left little in the case beyond the question (purely one of law) which is next discussed. However plausible and forceful the argument in favor of the inference that the relation between the claimant and the bankrupt, established by the dealings of the parties, was one of creditor and debtor, and not of vendee and vendor, the referee has found the latter relation to have existed. We accept this finding. We accept also his further finding that, at the time the assignments were made, the claimant did not know, nor had it reasonable cause to believe, that the assignor was

then insolvent, or in contemplation of insolvency, or that the transactions had
would be detrimental in any way to its creditors, or work out any situation in
the nature of an unlawful preference. This is the extent to which we under-
stand his findings to go. To find that this bankrupt was in fact at the time
solvent, or even the negative finding that it was not insolvent, is flatly incon-
sistent with the admitted situation and the admissions made at the argument.
The fact is, and is so found, that it was then insolvent. We require only the
additional fact that the assignments made were secret, and that not only
was no notice given at the time, but no notice was ever given, and no claim
of ownership was made until after the debtors had made payment of the ac-
counts, and the moneys had passed into the keeping of the receiver. We are
therefore brought to face the plain proposition which will be later stated. It
is preceded by this question: Is a secret, but otherwise unimpeached, written
assignment of choses in action, made when the assignor is insolvent, good as
against a trustee in bankruptcy, where there has been no delivery of the
property assigned other than that of the written assignment itself?"

After further discussion the court decided the question of law in-
volved against the petitioner, saying:

"All, however, which the claimant acquired by his paper, was the right to
demand and receive payment of these accounts from the debtors. When he
permitted them to pay without notice of his title, his right to collect was
gone. He cannot, without the aid of a chancellor, transfer his claim to the
money, and the chancellor must refuse his aid to one whose title is not fa-
vored by the policy of the law. In other words, the sole right of the claim-
ant was to sue the debtors of the bankrupt. If it has lost that right through
its own act, equity will not provide a substitute, which it can only supply at
the expense of creditors. The reason is the legal title to these moneys is in
the trustee. The claimant can confront this at the most with an equitable
title to accounts, which was good only against the bankrupt, and even this it
has lost. It would require a stronger equity than the claimant has shown
to create for it another title."

[1] Herein we think the court was in error. The accounts in ques-
tion were bought by the Credit Company. At the time of doing so it
paid for them in substantial part, and agreed to pay the balance of the
purchase money thereafter. As between the Down-Draft and the
Credit Companies, ownership of such accounts was transferred, and
while the former was made the agent to collect them, the money col-
lected was that of the owner in the hands of a collecting agent, and lia-
ble to be paid to such owner when demanded. While thus in the hands
of such agent and sufficiently identified, the collected funds could not
have been levied upon by a creditor of the Down-Draft Company as its
money, for under the law of Pennsylvania this could only be done by
an attachment execution, and under the decisions of that state (Phillips'
Estate, 205 Pa. 530, 55 Atl. 216, 97 Am. St. Rep. 750, and cases there
cited) such attaching creditor had no higher right to the proceeds of
the collected accounts belonging to the Credit Company than had the
Down-Draft Company.

[2] The relative rights of the Credit and Down-Draft Companies
then being such that no execution creditor of the latter could take this
fund from the Credit Company, it follows that the receiver in bank-
ruptcy took no greater right than an execution creditor, for the bank-
rupt law provides:

"Such trustees, as to all property in the custody or coming into the cus-
tody of the bankruptcy court, shall be deemed vested with all the rights,

remedies, and powers of a creditor holding a lien by legal or equitable proceedings thereon, and also, as to all property not in the custody of the bankruptcy court, shall be deemed vested with all the rights, remedies, and powers of a judgment creditor holding an execution duly returned unsatisfied." Act July 1, 1898, c. 541, § 47, 30 Stat. 557, as amended by Act June 25, 1910, c. 412, § 8, 36 Stat. 840 (Comp. St. 1913, § 9631).

Thus measuring the receiver's rights by those of an execution creditor.

[3] Such being the case, it follows that this fund was the property of the Credit Company, unless absence of notice to the several debtors invalidated the sale of the accounts. What the effect of absence of notice might be, were the rights of debtors owing such accounts here involved, does not concern us in this case, and need not be discussed, but certain it is that such lack of notice does not invalidate the transfer of these accounts as between the Credit and the Down-Draft Companies. That point was covered in Greey v. Dockendorff, 231 U. S. 514, 34 Sup. Ct. 167, 58 L. Ed. 339, where it was said:

"It is objected that this lien was secret. But notice to the debtors was not necessary to the validity of the assignment as against creditors. Williams v. Ingersoll, 89 N. Y. 508, 522. And merely keeping silence to the latter whether known or unknown, created no estoppel. Wiser y. Lawler, 189 U. S. 260, 270 [23 Sup. Ct. 624, 47 L. Ed. 802]; Ackerman v. True, 175 N. Y. 363 [67 N. E. 629]. There was no active concealment, and no attempt to mislead any one interested to know the truth."

It follows, therefore, that the decree below must be reversed, and the case remanded, with instructions to approve the decree entered by the referee.

[4] We note in conclusion that this case turns on a question of law, and is therefore properly brought before us on petition to revise.