Petition of NATIONAL DISCOUNT CO.

NATIONAL DISCOUNT CO. v. EVANS et al.

In re HITT LUMBER & BOX CO.

(Circuit Court of Appeals, Sixth Circuit. March 18, 1921.)

Nos. 3458, 3468.

1. Bankruptcy ⟊440—Decision as to third person's claim to property in trustee's hands reviewable by appeal, not by revision; "controversy arising in bankruptcy proceedings."

A decision of a bankruptcy court as to a third person's claim against a trustee in bankruptcy as to property coming into the bankrupt's hands was reviewable, as a "controversy arising in bankruptcy proceedings," only by appeal under Bankruptcy Act, § 24a (Comp. St. § 9608), and, claimant having both appealed and petitioned to revise, the petition to revise will be dismissed, as the remedies by appeal and petition to revise under section 24b are mutually exclusive.

[Ed. Note.—For other definitions, see Words and Phrases, Second Series, Controversy Arising in Bankruptcy Proceedings.]

2. Usury ⟊2(5)—Discount contract held governed by laws of state of performance.

A contract between a lumber and box company of Tennessee and a discount company, executed in Ohio, in which the discount company resided and did business, for the assignment to the discount company from time to time of notes and accounts due from the box company's debtors for advances thereon by the discount company and for collection of the assigned accounts by the box company and the remittances of their proceeds to the discount company, was governed by the usury laws of Ohio, the place of performance.

3. Sales ⟊6—Transaction held pledge, and not sale, of accounts.

A contract between a box company and a discount company, under which the discount company was to advance the box company a certain percentage of the box company's accounts receivable, which accounts the box company was to assign to the discount company, repurchasing accounts not paid at maturity, held a contract, not of purchase of the accounts, but of pledge thereof.

4. Usury ⟊18—Contract held usurious.

Under a contract between a box company and a discount company, under which the discount company was to advance the box company 80 per cent. of the value of accounts receivable, which were to be assigned by the box company to the discount company, the box company to collect the accounts and remit their proceeds to the discount company, and the discount company to charge 1 per cent. per month on the face value of the accounts until paid, that is, 15 per cent. per annum upon the amounts advanced, held, that the 9 per cent. thus reserved, in excess of the 6 per cent. authorized by the usury laws of the state of the contract, bore no reasonable relation to the character of services to be rendered, and that the contract was unenforceable as to interest above 6 per cent. per annum.

5. Corporations ⟊661(2)—Foreign discount company's noncompliance with laws did not bar recovery of sums collected by borrower on assigned accounts receivable.

Even though a foreign discount company was doing business in Tennessee, the fact that it had not complied with the laws of that state, in respect of conditions precedent to the right to do business in that state, did not forbid its recovery of sums collected by its borrower on accounts receivable of the borrower, assigned to the discount company as security for its discounting such accounts, which accounts the borrower was obligated to collect.

⟊For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. **Bankruptcy ☞184(2)—Unrecorded assignment, good against creditors, good against trustee in bankruptcy.**

Where there are no statutes making record or registration of an assignment of accounts for security for a loan requisite to validity of the assignment against either assignor or assignor's creditors, the situation is not changed by the intervention of bankruptcy.

7. **Bankruptcy ☞184(2)—Courts ☞367—Interpretation by state court of general law not binding on federal courts, unless involving a rule of property having situs within the state.**

The holding of the Tennessee courts that notice to the debtor is necessary to the validity of an assignment of choses in action, being based on an interpretation of the general law, is not binding on the federal courts, unless it can be said to involve a rule of property having a situs within the state; and the mere fact that the debtors owing accounts receivable due the assignor lived in Tennessee did not give the accounts themselves a situs within the state, bringing them within the rule; but their situs was in Ohio, where the assignment was made, and where the assignor had contracted to pay the assignee, to whom the accounts had been pledged, the proceeds of the accounts as collected by the assignor, so that, no notice to the debtor being required by the general law, the assignment would be valid without such notice, as respects the trustee in bankruptcy of the assignor.

8. **Bankruptcy ☞214—Proceeds of property must be traced to fasten lien thereon.**

Where bankrupt assignor received from debtors, whose debts or accounts had been assigned by him as security for money borrowed, certain lumber and an automobile truck in payment of such accounts, and his receiver in bankruptcy had used the lumber and proceeds of sale of the truck in operating the bankrupt's business, the pledgee was not entitled to have its lien fasten upon the proceeds of judgments against such receiver, recovered by the trustee in bankruptcy succeeding him, for misconduct of the business and misapplication of funds, although such judgments constituted practically the only remaining estate available for payment of the bankrupt's obligations, where there was no showing that the recoveries were either wholly or in part (and, if in part, what part) on account of the receiver's dissipation of the lumber and proceeds of sale of the truck, although as to an amount collected by the receiver on the pledged accounts and never paid to the pledgee·the situation would be different, as such funds never came into the bankrupt's hands and were.never part of his estate.

Appeal from and Petition to Revise an Order of the District Court of the United States for the Eastern District of Tennessee; Edward T. Sanford, Judge.

In the matter of the bankruptcy of the Hitt Lumber & Box Company. On petition by the National Discount Company against H. M. Evans, trustee of the bankrupt, and another, an order was entered awarding less relief than prayed for, and petitioner appeals and petitions to revise. Order reversed, and record remanded, with directions.

See, also, 262 Fed. 1020.

Howard F. Burns, of Cleveland, Ohio (White, Johnson, Cannon & Spieth, of Cleveland, Ohio, on the brief), for petitioner and appellant.

J. W. Thompson, of Chattanooga, Tenn. (Lusk & Thompson and Finlay & Campbell, all of Chattanooga, Tenn., on the brief), for respondent and appellees.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Before KNAPPEN, DENISON, and DONAHUE, Circuit Judges.

KNAPPEN, Circuit Judge.   On April 19, 1917, about 2½ months before the filing of petition for bankruptcy herein, the bankrupt entered into contract with the National Discount Company for the assignment to the latter from time to time of notes and accounts due from the bankrupt's debtors, for advances thereon by the Discount Company, and for collection of the assigned accounts by the bankrupt and the remittances of their proceeds to the Discount Company.   Between the filing of the petition in bankruptcy and the appointment of the trustee, the receiver in bankruptcy collected upon these assigned accounts $6,924.16, remitting to the Discount Company the entire of such collections; also the further sum of $1,110.83, no part of which was remitted to the Discount Company, the entire amount having been expended by the receiver in the administration of the bankrupt's estate.   The trustee in bankruptcy collected from such accounts the further sum of $217.71, none of which was remitted to the Discount Company.   Included in the accounts assigned by the bankrupt to that company were accounts against the Chattanooga Manufacturing· Company aggregating $9,989.35· and against the Brock Candy Company aggregating $437.28.   The bankrupt (previous to bankruptcy), without authority from or knowledge of the Discount Company, received from the Chattanooga Manufacturing Company in payment of its account lumber of a value exceeding the face of the account, and received from the Candy Company an automobile truck in lieu of payment by money.

The Discount Company filed in the court below its intervening petition, alleging its purchase from the bankrupt of both accounts in question; their payment in the manner stated; that both lumber and truck were in the bankrupt's hands at the time of the filing of the petition in bankruptcy; that the bankrupt obtained no right or title to the lumber, but at the time of bankruptcy held it in trust for the Discount Company; and that both the lumber and the truck were in law and equity the Discount Company's property—and asking either the delivery to it of both lumber and truck or a preferred claim for the values of the two items of property, alleged to aggregate $10,426.53.

Upon issues joined upon this petition (in part informally, with the idea of disposing of the entire controversy between the parties) the court found that the lumber was intermingled by the bankrupt with other lumber of like character, and used from day to day in its manufacturing business; that when the petition in bankruptcy was filed the bankrupt had on hand an amount of such lumber, or of lumber substituted therefor and intermingled therewith, exceeding in value the face of the Chattanooga Manufacturing Company's account; that this remaining lumber was used by the receiver; that the proceeds of neither the lumber nor the truck (sold by the receiver) were traceable into any fund or property coming into the trustee's hands.   For this reason the Discount Company was denied a lien, or any other superior right to the lumber or truck or their proceeds.   It was further found that of the $6,924.16 collected by the receiver and remitted to the Discount Company $6,104.35 was collected from debtors residing in Tennessee,

and the remaining sum of $819.91 from debtors residing in Ohio; that as to the latter sum the Discount Company was entitled to priority over the bankrupt's general creditors, but that as to the former it was not so entitled. The same ruling was made as to the $217.71 collected by the trustee, and for the same reason. It was further held that the contract between the bankrupt and the Discount Company was one of loan, that it was an Ohio contract, and that under the laws of that state it was usurious and nonenforceable as to interest above 6 per cent. per annum.

The final order required the Discount Company to return to the trustee in bankruptcy the $6,104.35 collected by the receiver from Tennessee debtors; that upon such return the Discount Company's claim be allowed as an unsecured claim in the sum of $15,450.28—being the $16,-270.09 due the Discount Company at the time of bankruptcy (purged of usury), less the $819.81 collected by the receivers from debtors residing in Ohio—and without any lien upon or preference with respect to "any of the amounts collected by the receiver or trustee and not remitted to" the Discount Company. The case is here both on appeal and on petition to revise under section 24b of the Bankruptcy Act (Comp. St. § 9608).

[1] 1. The case presents, in our opinion, a "controversy arising in bankruptcy proceedings," appealable under section 24a of the act. Hewit v. Berlin Machine Works, 194 U. S. 296, 300, 24 Sup. Ct. 690, 48 L. Ed. 986; Knapp v. Milwaukee Trust Co., 216 U. S. 545, 30 Sup. Ct. 412, 54 L. Ed. 610; Rode & Horn v. Phipps (C. C. A. 6) 195 Fed. 414, 418, 115 C. C. A. 316. The remedies by appeal and by petition to revise under section 24b being mutually exclusive (Matter of Loving, 224 U. S. 183, 188, 32 Sup. Ct. 446, 56 L. Ed. 725; In re Mueller [C. C. A. 6] 135 Fed. 711, 715, 68 C. C. A. 349), the petition to revise is dismissed.

[2-4] 2. The contract between the bankrupt and the Discount Company is, in our opinion, governed by the usury laws of Ohio. The preliminary contract was executed in that state, in which the Discount Company resided and did business; from time to time schedules of assigned accounts were forwarded by the bankrupt to the Discount Company, where each account was considered and either accepted or rejected. The collections were to be remitted to the Discount Company at Cleveland. It was thus to be performed in Ohio. We agree with the District Judge that the contract did not contemplate a purchase of accounts and bills receivable by the Discount Company, but was intended to provide merely for loans secured by assignment of such accounts and bills. The question is, of course, one of intent.

The Discount Company was to advance to the bankrupt 80 per cent. of the face value of the accounts, charging for expenses and services rendered 1 per cent. per month on their face value until paid, which means 15 per cent. per annum on the amounts advanced. In case the accounts were not paid at maturity, the bankrupt was required to repurchase them at their full face value, whereupon it would apparently be entitled to receive the reserved 20 per cent. less the Discount Com-

pany's charges—in effect, 15 per cent. per annum of the amount advanced. We agree with the District Judge that the 9 per cent. thus reserved, in excess of the 6 per cent. authorized by the Ohio laws, bore no reasonable relation to the character of services to be rendered. We are also impressed, as was the District Judge, that no substantial services justifying anything like the charges made were actually rendered, or intended to be rendered, for the bankrupt, but that language employed expressive of actual sale was used merely as a cover for a fictitious and usurious contract of loan. The case, in our judgment, is in no substantial respect distinguishable from Home Bond Co. v. McChesney, 239 U. S. 568, 575, 36 Sup. Ct. 170, 60 L. Ed. 444. The provisions relative to notes, while perhaps not so glaring as those relating to accounts are in harmony with the conclusion we have reached.

[5] 3. Unless the rights of the parties are governed by the rule in Tennessee the Discount Company was entitled to retain the entire $6,-924.16 collected by the receiver from the assigned accounts, instead of merely the $819.81 collected from debtors residing in Ohio, notwithstanding the accounts were held as security only, for the debt which they secured far exceeded the amount collected. We agree with the District Judge that, if the Discount Company was "doing business" in Tennessee (which we do not decide), the fact that it had not complied with the laws of Tennessee, in respect of conditions precedent to the right to do business in that state, does not forbid its recovery of sums collected upon the assigned accounts by either the bankrupt or its receiver. See State v. O'Brien, 94 Tenn. 79, 28 S. W. 311, 26 L. R. A. 252; Insurance Co. v. Kennedy, 96 Tenn. at page 716, 36 S. W. 709.

[6, 7] Under the generally accepted rule of law, and where, as here, the rights of the debtors owing the accounts are not involved, the assignments in question, made, as they were, in good faith, were valid as against both the bankrupt and its creditors, notwithstanding no notice was given the latter, and in spite of the facts that the assigned claims remained in the bankrupt's possession, and that those liable to pay the claims were not notified of the assignment. Greey v. Dockendorff, 231 U. S. 513, 516, 34 Sup. Ct. 166, 58 L. Ed. 339; In re Cincinnati Iron Store (C. C. A. 6) 167 Fed. 486, 490, 93 C. C. A. 122; Union Trust Co. v. Bulkeley (C. C. A. 6) 150 Fed. 510, 516, 517, 80 C. C. A. 328; In re Hawley Furnace Co. (C. C. A. 3) 238 Fed. 122, 125, 151 C. C. A. 198; Williams v. Ingersoll, 89 N. Y. 508, 522; Thayer v. Daniels, 113 Mass. 129; Copeland v. Manton, 22 Ohio St. 404; Preston Nat. Bank v. Purifier Co., 84 Mich. 364, 387, 47 N. W. 502. By the statutes of neither Ohio nor Tennessee was record or registration of such an assignment requisite to its validity against either the assignor or its creditors, and the situation in this respect is not changed by the intervention of bankruptcy (Carey v. Donohue, 240 U. S. 430, 36 Sup. Ct. 386, 60 L. Ed. 726, L. R. A. 1917A, 295; Sullivan v. Myer, 137 Tenn. at page 420, 193 S. W. 124); and, even since the amendment of 1910 (Comp. St. § 9585 et seq.), a trustee in bankruptcy, speaking generally, takes the property subject to all prior liens and equities (In re Sherwoods [C. C. A. 2] 210 Fed. 754, 760, 127 C. C. A. 304, Ann.

Cas. 1916A, 940; In re McGarry [C. C. A. 7] 240 Fed. 400, 402, 153 C. C. A. 326).

In point of fact, each account was marked on the bankrupt's books as "sold to the National Discount Company" and an actual assignment thereof was delivered to that company. But by the general law, as interpreted by the courts of Tennessee, notice to the debtor of the assignment of a chose in action is necessary to perfect it as against either the debtor or subsequent assignees or creditors. Nelson v. Trigg, 75 Tenn. (7 Lea) 69, 73. If, however, the subsequent assignee or creditor has not perfected his right by notice to the debtor, "it is a contest between equities, and the first assignee must prevail, upon the maxim that he who is first in time is first in right." Dinsmore v. Boyd, 74 Tenn. (6 Lea) 689, 701; Nelson v. Trigg, supra, at page 75. And so it has been held in Tennessee that the attachment of a debt before notice to the debtor of an assignment thereof will take precedence over the assignment. Dillingham v. Insurance Co., 120 Tenn. 302, 309 et seq., 108 S. W. 1148, 16 L. R. A. (N. S.) 220. The holding of the Tennessee courts, that notice to the debtor is necessary to the validity of an assignment of choses in action, is based upon an interpretation of the general law, and so is not binding upon the courts of the United States, unless it can be said to involve a "rule of property having a situs within the state." Russell v. Grigsby (C. C. A. 6) 168 Fed. 577, 580, and cases cited at the latter page, 94 C. C. A. 61, 64.

The question thus is: Did the mere fact that those owing the accounts lived in Tennessee give the accounts themselves a "situs" in that state, within the meaning of the rule referred to—such a situs as would be recognized in the case of a pledge of tangible chattels (Re Hitt Lumber & Box Co. [C. C. A. 6] 261 Fed. 116, 117); or, under recording laws, as respects a permanently intended location of such chattels (Potter Co. v. Arthur [C. C. A. 6] 220 Fed. 843, 136 C. C. A. 589, Ann. Cas. 1916A, 1268). The question thus stated is not free from difficulty. The Supreme Court of Tennessee has recognized such a situs of choses in action for purposes of jurisdiction under the attachment laws. and we assume correctly. Dillingham v. Insurance Co., 120 Tenn. 302, 313, 108 S. W. 1148, 16 L. R. A. (N. S.) 220. Such is the theory of garnishment statutes generally. But situs for purposes of jurisdiction to levy does not necessarily, or, in our opinion, naturally, involve a situs (like that pertaining to tangible property, real or personal) such as is required to make it the subject of a "rule of property." The residence of the debtor is by no means the situs of the debt for all purposes. Indeed, a debt, not being a tangible thing, has no actual, but only a theoretical, situs. The debts in question had a situs, at least for purposes of taxation, at the residence of their assignee; and the same would be true, even as to the assignor, had it resided outside of Tennessee. In State Tax on Foreign-held Bonds, 15 Wall. at page 320, 21 L. Ed. 179, it was said:

"To call debts property of the debtors is simply to misuse terms. All the property there can be in the nature of things in debts of corporations belongs to the creditors, to whom they are payable, and follows their domicile, where-

ever that may be. Their debts can have no locality separate from the parties to whom they are due."

That a court of bankruptcy has constructive possession of choses in action belonging to a bankrupt (In re Ransford [C. C. A. 6] 194 Fed. 658, 663, 115 C. C. A. 560), and jurisdiction to determine claims to property so in its constructive custody (Orinoco Co. v. Metzel [C. C. A. 6] 230 Fed. 40, 44, 144 C. C. A. 338), does not mean that the debts have an actual situs within the district, in the sense that tangible chattels and real estate have. A debt may have a situs, for purposes of jurisdiction, for the remedial purpose of a garnishment statute (and even for purposes of the bankruptcy act), and have no common-law situs within the meaning of the "rule of property." We say "common-law situs," because neither the Tennessee garnishment statute, nor any statute of that state, attempts to declare the existence of a situs affecting a "rule of property."

We think it the natural, and thus the better, view that the general situs of the accounts, as distinguished from the specific or qualified situs for the remedial purpose of garnishment jurisdiction, was at the place where the assignments were held and where the contract was to be carried out. The decision of this court in Union Trust Co. v. Bulkeley, supra, is not opposed to this view. The question there was: Where did the parties intend their contract of assignment was to be carried out? What was there said about the assigned choses in action being "located in Michigan" was merely incidental to the question of intent, as was the fact that the assignor of the accounts was located and did business in that state—no reference being made to the place of residence of those owing the bills and accounts.

The Tennessee rule of necessity of notice to the debtor is opposed to the great weight of authority. In the absence of authoritative or convincing decision that the accounts had the actual Tennessee situs attributed to them by the court below, we are unable to agree with its conclusion. It results from these views that the Discount Company should not only be relieved from paying back to the trustee the $6,104.35 collected by the receiver from Tennessee debtors, but should recover the $217.71 collected by the trustee.

[8] 4. The sole reason for denial of relief to the Discount Company with respect to the lumber and truck was that their proceeds had not been traced into the hands of the trustee in bankruptcy, as distinguished from the receiver—it appearing that the receiver, who subsequently became trustee, had used the lumber (and presumably the proceeds of the truck) in operating the bankrupt's business.

The condition of the bankrupt's estate makes it unnecessary to consider whether the reason stated is enough to negative right to relief. It appears from the record that at the time of the hearing below the present trustee "had in his hands unexpended the sum of $340, no dividend having been paid creditors." It also appears that the present trustee has recovered judgments against the receiver in the sum of upwards of $14,000 "for misconduct of the business and misapplication of funds," and that these judgments were then pending upon petition

to review and were still uncollected. The natural inference is that the judgments, together with the $340 referred to, constitute the only remaining estate available for payment of its obligations, including the $217.71 to which we have found the Discount Company entitled. The latter company apparently so understands the situation, its counsel stating in brief that "practically the only assets left in the hands of the present trustee are the judgments against * * * the original receiver and trustee, for the misconduct of the business and misapplication of funds"; its contention being that the Discount Company's lien should fasten upon the proceeds of the judgments as representing the dissipated estate. The difficulty with this contention is that there is nothing to show that these recoveries were either wholly or in part (and, if in part, in what part) on account of the receiver's dissipation of the lumber in question; and without such showing the Discount Company would not be entitled to any interest therein in preference to general creditors, that is to say, beyond its ratably distributive share.

5. The claim for $1,110.83, collected by the receiver and not paid to the Discount Company, stands on a different basis. These funds never came into the bankrupt's hands, and were never part of its estate. They came from the Discount Company's debtors (and thus in a proper sense from the Discount Company) directly into the hands of the receiver, who was an officer of the bankruptcy court. That officer, however, had and could be given no authority to use the money so collected in operating the bankrupt's business or in paying the expenses of its administration; his only duty being to pay the same over to the Discount Company. In our opinion, the latter is entitled to priority over general creditors in payment from the remaining assets of the estate, including the recovery (if any shall be finally had) from the receiver and former trustee.

The order of the District Court appealed from is accordingly reversed, and the record remanded, with directions to enter a new order consistent with this opinion. The amount of the general claim of the Discount Company will, of course, be modified, to meet the new situation created.