## In re DIER et al. *

### EISENLOHR v. EHRICH.

(Circuit Court of Appeals, Third Circuit. February 25, 1924.)

No. 3064.

1. **Liens ☞7—Equitable lien based on equitable assignment.**

    An equitable lien 'springs from an equitable assignment.

2. **Assignments ☞48—Equitable assignment may be in writing or by parol.**

    The form of an equitable assignment is immaterial, and it may be either in writing or by parol.

3. **Assignments ☞48—Subject-matter of equitable assignment must be capable of identification.**

    The first essential of an equitable assignment is that the subject-matter must be such as to admit of identification and must not be vague or uncertain.

4. **Assignments ☞48—Intangible right may be subject of equitable assignment.**

    By the general law and the law of Pennsylvania a mere intangible right may be the subject of an equitable assignment by a contract to pledge it, when reduced to tangible form.

5. **Assignments ☞48—Equitable assignment must be based on valuable consideration.**

    An essential element of an equitable assignment is that it must be based on a valuable consideration moving from the assignee.

6. **Assignments ☞48—Essentials of "equitable assignment" stated.**

    To work an "equitable assignment," there must be an absolute, actual, or constructive appropriation by the assignor of the subject-matter to the assignee, based on a valuable consideration and with the intention on the one side to assign and on the other to receive.

    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Equitable Assignment.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 44 Sup. Ct. 459, 68 L. Ed. ——.

**7. Bankruptcy ⊕=188(3)—Transaction held to give lender equitable lien as security, enforceable against trustee in bankruptcy.**

At the making of a loan it was agreed that the lender should have as security the equity of the borrower in certain real estate, which should be incorporated, and the stock or bonds of the corporation delivered to him. It was so incorporated, and the stock delivered, but before such delivery a petition in bankruptcy was filed against the borrower. *Held*, that the original transaction was a present pledge of a security, to be completed when in the future it was made capable of delivery, and that the lender had an equitable lien on the property represented by the stock, which could not have been displaced by levy of an execution by a creditor of the borrower, and which was therefore good as against his trustee in bankruptcy.

Appeal from the District Court of the United States for the Eastern District of Pennsylvania; Oliver B. Dickinson, Judge.

Suit in equity by Manfred W. Ehrich, trustee in bankruptcy of Elmore D. Dier and others, against Charles J. Eisenlohr. Decree for complainant, and defendant appeals. Reversed.

Owen J. Roberts and Frederick C. Newbourg, both of Philadelphia, Pa., for appellant.

Arthur Garfield Hays, of New York City, and Joseph Sternberger and Clarence Loeb, both of Philadelphia, Pa., for appellee.

Before WOOLLEY and DAVIS, Circuit Judges, and THOMSON, District Judge.

WOOLLEY, Circuit Judge. The question in this case is whether the defendant, on facts admitted or found by the court, has an equitable lien upon property of a debtor enforcible against his trustee in bankruptcy. The facts are not in dispute; we are concerned only with their inferences.

E. D. Dier & Co. was a firm engaged in the stock brokerage business with offices in Philadelphia and New York. Eisenlohr, the defendant, was not a customer of the firm, nor did he at any time have any transactions for profit with it. He was, however, personally acquainted with some of its members and in June, 1921, he loaned the firm $50,000 secured by mortgage on property in Philadelphia. In November, 1921, Dier & Co. asked Eisenlohr for another loan of $20,000. He made the loan in the form of $20,000 par value of Indianapolis City School Bonds. In December, 1921, he made the firm a further loan of $25,000 represented by that amount par value of County of Utah bonds. Each of the last two loans was made on the understanding that the collateral should be "the equity" in premises 42–44 New Street, a property in New York City owned by Dier & Co., subject to a first mortgage of $175,000. There is no doubt that this equity was the security offered and accepted for the loans at the time they were made or that it represented the difference between the value of the property and the amount of the mortgage lien. As this security was wholly intangible, Dier & Co. gave Eisenlohr 200,000 shares of a mining company until the equity in the New Street property could be put in "bankable" form, meaning, as it was testified, until the property could be incorpo-

rated and bonds or stock issued for the equity and delivered to Eisenlohr. After obtaining the loans Dier & Co. proceeded to incorporate the property under the name of "the 42–44 New Street Corporation," but when incorporated Dier & Co., instead of delivering to Eisenlohr the 100 shares of stock issued against the equity as they had agreed to do, hypothecated the shares with one Jesse Starr as collateral for another loan. With bankruptcy impending Dier & Co. realized their obligation to Eisenlohr and informed him through Gaines, one of their employés, that the shares had been pledged to Starr as collateral for a loan then reduced to $4,000, and that upon paying Starr this sum he could obtain the stock certificates.

Eisenlohr gave Gaines his check for $4,000 with authority to pay Starr and get the certificates. This was on January 14, 1922. On the same day a petition in bankruptcy against Dier & Co. was presented to Judge Mack sitting in the District Court for the Southern District of New York and an application for the appointment of a receiver was made. On Sunday, January 15, between 4 and 5 o'clock in the afternoon, Gaines met Starr in New York, delivered Eisenlohr's check and received, in return the certificates of stock in question. At about 6 o'clock on the same afternoon attorneys for the petitioning creditors and attorneys for the bankrupts appeared before Judge Mack and the appointment of a receiver was agreed upon. On Monday, January 16, Gaines delivered the stock certificates to Eisenlohr in Philadelphia. On the same day Judge Mack, in his chambers, signed a formal order appointing a receiver, marking the petition as filed Saturday, January 14, 1922 at 3 p. m. It was lodged in the office of the clerk of the court Monday, January 16. Subsequently, on July 9, 1922, Judge Mack ordered the clerk's records amended so as to read that the petition in bankruptcy had been filed in that court on Saturday, January 14, 1922, as shown by his endorsement on the petition.

In the course of the administration of the estate the trustee of the bankrupts brought this suit by bill in equity, reciting the facts and praying that the transfer of the certificates for the shares of stock to Eisenlohr be set aside as a preference, and that the certificates for the shares be surrendered. By stipulation the New Street property was sold and the proceeds amounting to $43,808 are now held in lieu of the 100 shares of stock to be disposed of in accordance with the final decision in this proceeding. The District Court entered a decree for the plaintiff; Eisenlohr, the defendant, took this appeal.

At the trial, and on this appeal, much discussion was addressed to the rights of the respective parties in the shares of stock arising from or voided by the filing of the petition in bankruptcy against Dier & Co. according as it was filed on one or the other of the disputed dates. The learned trial judge regarded this matter as determinative and said:

"The record now in evidence shows that the property which the alleged bankrupts attempted to transfer to the defendant had already passed to the receiver appointed in the bankruptcy. This we think disposes of the present contention in favor of the plaintiffs in this bill."

We shall postpone consideration of the conflict of rights between trustee and creditor and first direct attention to the substantive question of

whether Eisenlohr acquired an equitable lien on the stock of the No. 42–44 New Street Corporation at the time he loaned his securities to Dier & Co.,—not at the time the certificates of stock were physically delivered to him on the day before or on the day after the filing of the petition in bankruptcy.

[1-3] An equitable lien springs from an equitable assignment. In a valid equitable assignment there are certain essential elements with respect to which there is no disagreement between the parties. It is conceded that parol and written equitable assignments are of equal validity. Lightner's Appeal, 82 Pa. 301; Bispham's Principles of Equity, § 167. So also, that the form is immaterial. Fett's Estate, 39 Pa. Super. Ct. 246; Watson v. Bagaley, 12 Pa. 164, 51 Am. Dec. 595. The first essential of an equitable assignment, and therefore of an equitable lien, is that the subject matter must be such as to admit of identification; it must not be vague or uncertain. In re Hawley Downdraft Furnace Co., 238 Fed. 122, 151 C. C. A. 198; In re Stiger, 209 Fed. 148, 126 C. C. A. 96; affirmed on appeal, see Andrews v. Osborn, 239 U. S. 629, 36 Sup. Ct. 165, 60 L. Ed. 475. On this essential the court made the finding:

"To secure Eisenlohr he was given his choice of security among several offered, one of which is what is known to this record as 'the equity' in a real estate property. He elected to take the latter."

[4] The equity in the New Street property, though a legal entity, was a wholly intangible thing. It was therefore agreed that it should be put in tangible form and when this had been done the same subject matter in the new form should be delivered to Eisenlohr. It has long been known that courts of equity will support assignments not only of choses in action and of contingent interests and expectancies, but "also of things which have no present actual or potential existence, but rest in mere possibility; not intended as a present positive transfer, operative in præsenti, for that can only be of a thing in esse, but as a present contract to take effect and attach as soon as the thing comes in esse." Story's Equity Jurisprudence, § 1039.

By the decisions of the courts of Pennsylvania, under whose law the case at bar is governed, equitable liens have been repeatedly sustained where the subject of the pledge was a mere intangible right and therefore incapable of manual possession or actual delivery. Such instances are found in Collins' Appeal, 107 Pa. 590, 52 Am. Rep. 479, where a pledge of a partnership interest was sustained as an equitable lien; in Chase v. Petroleum Bank, 66 Pa. 169, where the court found an equitable lien arising from a debtor's pledge of his deposit account for payment of his debt to a bank; in Hanson v. Blake (D. C.) 155 Fed. 342, where an oral agreement of a mortgagor to insure property for the benefit of a mortgagee, whose money was used in the purchase, was held to give the mortgagee an equitable lien upon the proceeds of insurance as against the mortgagor and his trustee in bankruptcy, although the agreement was made after the mortgage was given and the policies were not in terms for the mortgagee's benefit. See Germantown Almegum Mfg. Co. (D. C.) 251 Fed. 755; Davis v. Billings, 254

Pa. 574, 99 Atl. 163; Imperial Textile Co. (D. C.) 239 Fed. 775; In re Stiger, 209 Fed. 148, 126 C. C. A. 96, distinguished on the facts.

[5] Another element of an equitable assignment is that it must be based on a valuable consideration moving from the assignee. Chase v. Petroleum Bank, 66 Pa. 169; 5 Corpus Juris, 909 et seq. There is no doubt that Eisenlohr gave such a consideration in the loan of his securities. On this point the trial court made a finding which disposes of this question. It is as follows:

"The finding is made that, *in consideration* of the making of the loans made as aforesaid, Dier & Co. *at the time* promised and agreed to give Eisenlohr as security 'the equity' in the property now represented by these shares of stock. * * * The stock at the time of the promise was not in existence as stock."

[6] Thus we come to the main essential of an equitable lien, its presence or absence in this case to be determined by what was done and intended when Dier & Co. "promised and agreed" to give Eisenlohr the equity in the New Street property as security, and when, relying thereon, Eisenlohr parted with his bonds. In other words, we come to the question whether the transaction was a present pledge of a security to be completed when, in the future, it was made capable of delivery or was a mere promise to give security in the future. If the latter, it was not an equitable assignment; if the former, it was an equitable assignment if otherwise it came within the principles of law governing such an assignment. These principles are as follows:

"In order to work an equitable assignment there must be an absolute appropriation by the assignor of the debt or fund sought to be assigned to the use of the assignee."

"The intention of the assignor must be to transfer a present interest in the debt or fund or subject matter."

"What amounts to a present appropriation, which constitutes an equitable assignment, is a question of intention to be gathered from all the language, construed in the light of attendant circumstances."

"Any words or transaction which shows an intention on the one side to assign and an intention on the other to receive, if there is a valuable consideration, will operate as an effective equitable assignment."

"To constitute an assignment good even in equity there must be an actual or constructive appropriation of the subject matter, a perfected transaction between the parties, intended to vest in the assignee a present right, even where the circumstances do not admit of its immediate exercise."

5 Corpus Juris, 909 et seq.

[7] A careful reading of the record discloses that Dier & Co. asked Eisenlohr to make them two purely accommodation loans, loans which in no event would return a profit to Eisenlohr and which, indeed, were quite unbusinesslike for him to make. As before stated, Dier & Co. offered Eisenlohr the choice of several securities, one being the equity in the New Street property in New York. It was represented that this security could not be presently delivered but that delivery would be made when the property was incorporated and stock or bonds issued. Eisenlohr accepted this security and on this security made the loans. In testifying, Eisenlohr never faltered in his contention that the security given him at the time he made the loans was the equity in the New Street property. It is quite evident from the naive manner in which he testified that he knew nothing about the principles of equitable as-

signments and equitable liens; yet, through an extended direct examination and a vigorous cross-examination he never deviated from the position that the thing then pledged for the securities he loaned was the equity in the New Street property. Nor did he say anything from which might be drawn the inference that the transaction was other than a present appropriation of an intangible security later to be made capable of manual possession and physical delivery. On this point his evidence was not contradicted. It therefore stands and must be accepted. Gathered from the language which the parties used, and construed in the light of the attendant circumstances, we find there was intention on the part of Dier & Co. presently to appropriate and assign, and intention on the part of Eisenlohr presently to accept, the equity in the property as the security for the proposed loans. In view of the intangible character of the security and the impossibility of immediate delivery the appropriation was necessarily constructive. Yet it was complete for it was intended to vest in the assignee a present right which, we do not doubt, would have sustained an action by him against the assignor. We regard this a stronger case of an equitable assignment, and therefore of an equitable lien, than some that have been cited in the Pennsylvania reports.

Being of opinion that at the time the loans were made an equitable lien arose in favor of Eisenlohr against the equity in the New Street property and that by virtue thereof Eisenlohr was entitled, as soon thereafter as that property was incorporated, to receive the stock issued against the equity, his rights thereto are superior to those of the trustee in the bankruptcy of Dier & Co. occurring a month or more afterward. This is not on the ground that a trustee in bankruptcy (as before the Act of June 25, 1910, c. 412, § 8, 36 Stat. 840, Comp. Stat. § 9631, amending section 47a2), stands in the shoes of the bankrupt and therefore cannot avoid a lien against the bankrupt's property acquired before the filing of the petition, but it is for the reason that the amendment of 1910, vesting a trustee "with all the rights, remedies and powers of a judgment creditor holding an execution duly returned unsatisfied," vests in him the rights of an execution creditor as of the date of the filing of the petition. As there was nothing in the antecedent transaction in the nature of fraud, or in the nature of a transfer or encumbrance of the property void as against some creditor under the laws of Pennsylvania, or void as against the trustee by reason of some positive provision of the Bankruptcy Act, whatever right the trustee acquired to the stock in question by force of the amendment of 1910 was only that which some creditor in Pennsylvania, holding an unsatisfied execution, might have had. On the authorities to which our attention has been directed we have been led to believe that an execution creditor of the bankrupt could not, under Pennsylvania law, have levied upon the stock of the New York corporation in question. As the trustee's rights in this regard are no higher than those of an execution creditor, we adjudge the rights of the equitable lienor superior to those of the trustee. In re Hawley Downdraft Furnace Co., 238 Fed. 122, 151 C. C. A. 198; Black v. Financing Corporation (C. C. A.) 279 Fed. 732. It follows that the decree below must be reversed.