MRS. SOPHIE SHOCKLEY, et al. v. W. J. HARRIS, et al.

Western Section. February 11, 1928.

Petition for Certiorari denied, April 14, 1928.

C. S. Littleton and J. L. Spurlock, of Chattanooga, for appellant.

Miller, Miller & Martin, and Allison, Lynch & Phillips, of Chattanooga, for appellee.

OWEN, J.  The complainants have appealed from a decree of the chancery court of Hamilton county dismissing their bill.  The original bill was filed herein by Mrs. Sophie Shockley, Mrs. Florence Berrin, Gertrude Harris and J. B. Harris against W. J. Harris and the Chattanooga Savings Bank & Trust Company, attaching certain funds in the hands of the latter; and seeking to hold said W. J. Harris to the terms of an agreement made with complainants.  The bill was likewise for the purpose of having declared effectual as a completed gift a certain assignment of defendant's interest in a decedent's estate in the hands of the Chattanooga Savings Bank & Trust Company as administrator.  Appellee, W. J. Harris, filed an

answer denying any consideration for a family settlement, and denying a gift of the property inasmuch as same had not been completed by delivery. It appears that the complainants are the children of the defendant, W. J. Harris, by his first wife, Annette Harris, a daughter of W. J. Harris and sister of the complainants died in Chattanooga, Tennessee, September 21, 1925, unmarried and intestate. The defendant Chattanooga Savings Bank & Trust Company qualified as her administrator. Annette left an estate of $3900 consisting entirely of personal property, money in bank, stocks and bonds. It appears that Annette Harris' mother died when Annette was about two or three years of age, the defendant placed her and some of his other children in an orphan's asylum in Augusta, Georgia. He again married and at the time of this litigation was living with his last wife and four children by her. The complainants are all nonresidents of Tennessee, the defendant, Harris, resides in Georgia near Augusta. It appears that after defendant placed his children in the orphanage they drifted out of his life, he manifested no affection for them and when they arrived at maturity they had no interest in their father. The deceased, Annette, after living at the orphanage became a trained nurse, shortly before her death she turned over the keys of her lock box in one of the banks in Chattanooga, where she kept her valuables, to Mr. Starr with directions that Mr. Starr would turn her keys over to her brother-in-law, E. A. Shockley. After the funeral of Annette Mr. Shockley sought to administer but was advised, as he was a nonresident, that he would have to get a resident to be an administrator, thereupon he procured the defendant bank to become administrator. It appears that Miss Annette told Mr. Starr shortly before her death that she wanted her brothers and sisters to have her estate but no steps were taken to have her make and execute a will, she stated that she wanted her single sister, Gertrude, to have a greater portion of her estate as her others sisters were married, but she didn't state in what proportion she desired her estate to be divided. Shortly after the qualification of the administrator the defendant's son-in-law, Shockley, and son, J. B. Harris went to Augusta, Georgia, located the defendant Harris, some nine or ten miles from Augusta, took him from his home to an uncle of J. B. Harris, Jake Ashford's home, some fifteen miles away so as to get the defendant away from the presence and influence of his present wife, and at Jake Ashford's home, J. B. Harris told his father about the death of Annette and he stated to his father that he and his sisters expected to share Annette's estate that his father consented to this suggestion and that Shockley, J. B. Harris, and W. J. Harris drove to Augusta, Georgia where they procured a Notary Public to draft an instrument which W. J. Harris signed and which is as follows:

"Augusta, Ga., October 6, 1925.

"Chattanooga Savings Bank,
"Chattanooga, Tenn.
"Gentlemen:

"Re: Annette Harris, deceased.

"The above-named party died intestate on September 21, 1925, a resident of Tennessee, and, as I am advised, you were made the administrator of her estate.

"I am informed that under the Tennessee law that the father of a decedent intestate—is sole heir-at-law, and, if I am correctly informed, the writer being the father of this decedent, I desire that my children now in life share with me in the following manner, to-wit: In the division of all moneys arising from this estate be equally divided between the following parties; the last named being the sisters and brother of this decedent; i. e., the four last parties:

"W. J. Harris, Hephzibah, Ga., R. F. D. # 3.
"J. B. Harris, Cordele, Ga., R. F. D.
"Mrs. Florence Berring. 710 Clark St., Cincinnati, Ohio.
"Mrs. Sophie Shockley, Apalachee, Ga.
"Miss Gertrude Harris, Atlanta, Ga., 42 Park St.

"The personal effects of this decedent are to be divided equally between the following parties, the sisters of my deceased daughter:

"Mrs. Florence Berring, 710 Clark St., Cincinnati, Ohio.
"Mrs. Sophie Shockley, Apalachee, Ga.
"Miss Gertrude Harris, Atlanta, Ga. (42 Park St.)

"Thanking you for your attention to this matter, I am

"Yours very truly,
"W. J. Harris,
"Hephzibah, Ga., R. F. D. # 3.

"Witnessed:

"Albert G. Ingram, Notary Public,
"Richmond County, Georgia.
"Albert G. Ingram, Notary Public,
"Richmond County, Georgia.

"Seal."

The defendant bank as administrator was not satisfied with this instrument and upon the advice of its counsel another instrument was drawn and mailed to W. J. Harris which he refused to sign and Harris notified defendant bank that he had revoked the first instrument. Complainant's bill seeks to enforce the written agreement we have set out in this opinion. A number of depositions were taken and on the final hearing the Chancellor held that inasmuch as there was no completed gift, but merely an agreement to make a gift, that the complainants could not recover unless there was a valuable consideration for the agreement embodied in the letter from defendant to the Chattanooga Savings Bank & Trust Company. He found

that there was never any chance for these complainants to establish a nuncupative will in their favor, and that consequently the litigation with which they threatened him was mere bluff on their part, and could not be the consideration for this agreement. The complainants have assigned three errors in this court, the three errors raise but one proposition and that is set out fully in the second assignment which is as follows:

The Chancellor erred in holding that the letter to the Chattanooga Savings Bank & Trust Company did not create an assignment or gift of defendant's interest in his deceased daughter's estate, because the letter signed, acknowledged and mailed to the administrator was the only delivery on which the property was capable, and created a valid and irrevocable gift. It insisted that complainants had threatened defendants with litigation and this litigation was a sufficient consideration to make the contract valid. Counsel cites in support of this proposition Owen v. Hancock, 1 Head, p. 563, our Supreme Court in that case said:

"Family compromises, fairly and reasonably made, to save the peace of a family, and prevent family disputes, will be sustained by a court of equity. And if, upon a doubtful question of construction of a will and uncertainty as to the rights of the children, the father, children and neighbors selected to settle their rights, join in consultation, and deliberately agree upon terms of compromise and settlement, which are reduced to writing, and signed, there being no unfair advantage taken, or imposition practiced, a court of equity will not interpose and set the same aside at the instance of a party who may have acted under a mistake as to his legal rights, and surrendered a legal advantage."

In the case from which we have just quoted the widow and children of the testator selected some neighbors who divided the testator's estate among the widow and children, later on it was sought to revoke and set aside this arbitration, the Supreme Court held that no unfair advantage had been taken of any of the parties and no imposition practiced. As a legal proposition, some of the parties under a proper construction of the testator's will might have taken only a life estate in the property in which they obtained a fee by the arbitrators. The mere threat to institute groundless litigation which could by no chance be successful, cannot furnish a consideration for the surrender of legal rights. Danheiser v. Savings Bank & Trust Co., 10 Thompson, 650, 656.

We find that complainants had no basis for a family compromise. Counsel for appellant cites and relies upon the case of Chase National Bank v. Sayles, reported in 48 A. L. R., p. 207, in suppot of his proposition that the assignment or paper writing signed by the defendant Harris and delivered to the bank administrator, created an irrevocable gift and the paper writing and delivery was

sufficient without any consideration. The authorities in the United States are in a conflict but we are of the opinion that the prevailing rule is that:

"An equitable assignment must be supported by a valuable consideration as a necessary and essential element. Equity will not interfere in aid of. a mere volunteer."

5 Corpus Juris, page 935, the following cases support the principle announced in Corpus Juris:

In the case of In re Dier, 296 Fed. 816, 820 (writ of certiorari denied by U. S. Supreme Court) the court says:—

"Another element of an equitable assignment is that it must be based on a valuable consideration moving from the assignee."

In Farmers Loan & Trust Company v. Winthrop, 202 N. Y. S., 456, 464, the court says:

". . . for equity never interposes to perfect a defective gift of valuable settlement made without consideration."

In Belitz v. Bryant Lumber Co., 113 Wash., 455, the court say:—

"Appellant contends that the written order to the bank amounted to an equitable assignment from the respondent to the bank of the amount sued on, and that it was not necessary to show that it had been accepted by the appellant. If it be admitted that appellant's position in this regard is correct, yet we must reach the same general result as that reached by the department. Before this instrument will be treated as an equitable assignment, it must be shown that there was a valuable consideration for the assignment."

In Brokaw v. Brokaw, 41 N. J. Eq., 215, 221, the court, speaking of an order, claimed to be an assignment, says:

"Courts of equity, however, view such instruments from a very different standpoint, and are in the constant habit of giving effect to them as equitable assignments, even in cases where no assent has been expressed by the debtor. 2 Story's Eq. Jur., sec. 1040. But they will not carry them into effect unless founded upon a valuable consideration. Mere volunteers, or persons claiming under consideration of love and affection, stand no better in equity than they do at law. Story's Eq. Jur., secs. 1040, 1047."

It appears that the defendant bank refused to accept the instrument defendant Harris had signed which was an order or assignment and as long as the bank refused to accept the same the gift was not completed and the defendant Harris had a right to revoke his gift or assignment which had been made without any consideration. We are of the opinion that there is no error in the decree of the Chancellor. All assignments are overruled and disallowed, the decree of the lower court is affirmed defendants will recover of complainants and their sureties on appeal bond all costs of the cause for which execution will issue.

Heiskell and Senter, JJ., concur.