## GREEY, TRUSTEE IN BANKRUPTCY OF SCHWAB-KEPNER COMPANY, *v.* DOCKENDORFF.

### APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.

No. 544.   Argued December 2, 1913.—Decided December 15, 1913.

No sufficient reason being shown for departing from it, this court follows its rule of not disturbing findings made by the Master, the court of first instance and the Circuit Court of Appeals.

Where the goods never would have come into the bankrupt's hands, had he not promised to give a lien thereon to one making the advances necessary for obtaining them, there is no reason why the rights of general creditors without liens should intervene to defeat security given in good faith and before there was any knowledge of insolvency. *National City Bank* v. *Hotchkiss, ante*, p. 50, distinguished.

Secrecy of a lien on goods purchased by advances made by the lienor does not invalidate it where there was no active concealment or any attempt to mislead anyone interested to know the truth, nor does merely keeping silent in such case create an estoppel.

203 Fed. Rep. 475; 121 C. C. A. 597, affirmed.

THE facts, which involve the validity of liens claimed by a creditor on accounts receivable assigned to him by the bankrupt, are stated in the opinion.

*Mr. Benjamin G. Paskus*, with whom *Mr. Ralph Wolf, Mr. James N. Rosenberg* and *Mr. Garrard Glenn* were on the brief, for appellant.

*Mr. Julius Henry Cohen*, with whom *Mr. Gerard B. Townsend* and *Mr. Theodore B. Richter* were on the brief, for appellee.

MR. JUSTICE HOLMES delivered the opinion of the court.

This was a petition by the appellee, Dockendorff, filed in the bankruptcy proceedings against the bankrupt, the

Schwab-Kepner Company, to have paid over to him the proceeds of accounts receivable alleged to have been assigned to him by the bankrupt. The defences set up were that the assignment was a preference and that it was made without present consideration with intent to defraud creditors of the bankrupt concern. The case was referred to a special master who found that it did not appear that either the petitioner or the bankrupt knew that the latter was insolvent at the time of the supposed preference or that there were any transfers with intent to defraud creditors, and found for the petitioner. His finding of facts and conclusion were concurred in by the District Court and Circuit Court of Appeals. 203 Fed. Rep. 475; 121 C. C. A. 597.

A part of the appellant's brief is devoted to the attempt to show that the findings below as to insolvency and the knowledge of the parties was wrong, and a distinction is urged between what are called the Master's inferences and the facts upon which those inferences were based. But no sufficient reason is shown for departing from our ordinary rule, where the Master, the court of first instance, and the Circuit Court of Appeals have agreed, and in the course of the hearing this was admitted. *Merillat* v. *Hensey*, 221 U. S. 333. On the other side it is argued that this is not a controversy arising in bankruptcy proceedings within § 24 of the Bankruptcy Act of July 1, 1898, c. 541, 30 Stat. 544, 553, and that therefore the appeal should not have been allowed. This contention if open, seems to be answered sufficiently by *Knapp* v. *Milwaukee Trust Co.*, 216 U. S. 545. But the appellant's main proposition is that the transactions with the appellee were fraudulent in law however unconscious of it the parties may have been, and so it is necessary to make a short statement of the facts.

The bankrupt, a New Jersey corporation, did business in New York as a cotton converter. It bought raw

material from the mills, ordered it sent to bleacheries designated by it, sold the goods when finished and had them shipped from the bleacheries to the buyers. Dockendorff, on favorable statements of the Company's condition, made successive agreements to procure loans not exceeding $175,000 at any one time, the bankrupt giving demand notes, assigning as security all its accounts receivable thereafter to be created, and paying certain commissions. In May, 1910, the agreement now in question was made. By this the bankrupt was to assign within seven days after shipment the accounts receivable of credit sales made by it; upon that security Dockendorff was himself to lend eighty per cent. of the net face value of such as he should approve, less commissions and discounts, up to $175,000; the bankrupt was to give its notes, deliver the shipping documents, furnish evidence of actual receipt of the merchandise when required, notify Dockendorff of any return of goods or counterclaims, deliver the proceeds of such accounts as were proper and permit him to examine its books and correspondence &c.; Dockendorff's lien was to be for all sums due, and to cover all accounts, but he. was not bound to lend on accounts not approved by him. Further details do not need to be stated in view of the establishment of the parties' good faith. On November 29, 1910, an involuntary petition was filed, the bankrupt then owing Dockendorff $252,838.54 for advances under the agreement, and he having received assignments of accounts from the bankrupt as it received orders, that is, after the contract of sale was made, but before the delivery of the goods.

The trustee relies upon the general application of the lien under the agreement as constituting a fraud in law. Whatever effect it might have as evidence must be laid on one side in view of the findings below. The question here is whether successive assignments of accounts by way of security, in pursuance of a contract under which ad-

vances were made to enable the assignor to get the goods on the faith of the undertaking that the accounts should be assigned, were bad. because the contract embraced all accounts, although neither party contemplated any fraud. The rule of the English statutes as to reputed ownership may extend to debts growing due to the bankrupt in the course of his business, but we have no such statute. The advances were the means by which the bankrupt got the ownership of the goods. The contract of itself would operate as a conveyance as soon as the rights to which it applied were acquired. *Field* v. *New York*, 6 N. Y. 179. We do not see why in the interval between the acquisition of the goods and the specific assignment of accounts, the right of general creditors without lien should intervene to defeat a security given in good faith, when, but for the promise of it, the property never would have come into the bankrupt's hands. There may have been a moment when the goods could have been attached, or when, if insolvency had been made known, as in *National City Bank* v. *Hotchkiss, ante,* p. 50, it would have been too late to make the promised lien good. But in this case, the lien was acquired before any knowledge of insolvency, and before any attachment intervened. See *Jaquith* v. *Alden,* 189 U. S. 78. *Coder* v. *Arts,* 213 U. S. 223. *Van Iderstine* v. *National Discount Co.,* 227 U. S. 575, 583. It is objected that this lien was secret. But notice to the debtors was not necessary to the validity of the assignment as against creditors, *Williams.* v. *Ingersoll,* 89 N. Y. 508, 522, and merely keeping silence to the latter whether known or unknown, created no estoppel. *Wiser* v. *Lawler,* 189 U. S. 260, 270. *Ackerman* v. *True,* 175 N. Y. 353, 363. There was no active concealment and no attempt to mislead anyone interested to know the truth.

We content ourselves with this very general answer to an argument that dealt with many details that we have not mentioned, because those details were material only to a

reconsideration of the findings of fact. Probably a hope of securing such a reconsideration was one of the inducements toward bringing the case here.

A subordinate question was raised on the exclusion of some of the bankrupt's books, as to which it seems to us enough to say that it does not appear that any wrong has been done.

*Decree affirmed.*