## In re KLEIN.

## KAPLAN et al. v. CLARK.

(Circuit Court of Appeals, Second Circuit. November 3, 1924.)

No. 18.

**1. Bankruptcy ⊂⊃140(1)—Delivery of goods to retailer on consignment held bailment, good as against retailer's creditors, in absence of fraud.**

Agreement that goods should be delivered to retailer "on memorandum or consignment," with right to demand their return on Monday of any week or option to receive invoice price, title meanwhile to remain in wholesaler, *held* to create bailment, with option in wholesaler to convert it into sale, good as against retailer's creditors on his bankruptcy, in absence of fraud.

**2. Bankruptcy ⊂⊃151—Bankruptcy trustee not innocent purchaser.**

Bankruptcy trustee is not innocent purchaser, but takes bankrupt's property as bankrupt had it at time of petition subject to all valid claims, liens, and equities.

**3. Bailment ⊂⊃1—That bailee may sell goods and retain all over certain price does not destroy bailment.**

That bailee is permitted to sell goods and retain all over certain price does not destroy existence of bailment.

**4. Bankruptcy ⊂⊃140(1)—Identification of goods delivered on consignment held sufficient to entitle wholesaler to recover them.**

Identification of goods delivered to retailer on consignment *held* sufficient to entitle wholesaler to recover them on retailer's bankruptcy.

**5. Bankruptcy ⊂⊃140(1)—That wholesaler suspected bankrupt's condition held not to effect validity of agreement to deliver goods on consignment.**

That wholesalers suspected bankrupt's financial condition prior to bankruptcy would not affect agreement to deliver goods to bankrupt on consignment.

**6. Bankruptcy ⊂⊃140(1)—Test whether consignment agreement made in good faith or mere device to conceal sale stated.**

Where parties adhere to terms of consignment agreement, presumption is that agreement was made in good faith, but, if they ignore agreement and treat delivery of goods as actual sale, presumption is that agreement is mere device to conceal actual sale.

**7. Bankruptcy ⊂⊃140(1)—Evidence held to show consignment agreement bona fide and not device to conceal sale.**

Consignment agreement *held* carried out so as to indicate agreement was made in good faith, and was not mere device to conceal actual sale to bankrupt.

**8. Bankruptcy ⟨⇒140(1)—Bankrupt's failure to procure insurance on consigned goods as required by consignment agreement held not inconsistent with ownership in consignors.**

That bankrupt failed to procure insurance on goods consigned to him, as required by consignment agreement, *held* not inconsistent with ownership in consignors nor justify inference that he regarded himself as owner.

**9. Bankruptcy ⟨⇒140(1) — That goods consigned to bankrupt were found in various parts of store, mingled with bankrupt's goods, did not effect owner's rights.**

That goods consigned to bankrupt were found in various parts of his store, mingled with his own goods, did not effect owner's rights; owner being under no duty to other creditors of bankrupt to give notice that goods consigned were not bankrupt's property.

**10. Bankruptcy ⟨⇒212—Trustee held entitled to show by evidence or cross-examination that consignment agreement was not carried out to show it was sale.**

Where petitioners claimed property in bankruptcy trustee's possession, it was error to refuse to permit trustee to show by evidence or cross-examination that consignment agreement between petitioners and bankrupt was not carried out in order to show that it was mere device to conceal actual sale to bankrupt.

Petition to Revise Order of the District Court of the United States for the Southern District of New York.

In the matter of Walter Klein, bankrupt; William J. Clark, trustee. Leon Kaplan and another, copartners, doing business under the firm name of Kaplan Bros., appeal, and petition to revise an order of the District Court denying petition for reclamation of garments delivered to bankrupt on consignment. Reversed and remanded, with directions.

I. Gainsburg, of New York City (Harold R. Medina, Joseph Segal, and Leander I. Shelley, all of New York City, of counsel), for petitioners.

Isaac Steinhaus, of New York City, for respondent.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. [1] Walter Klein, a dealer in suits and cloaks, was adjudged a bankrupt on an involuntary petition filed November 12, 1921. The petitioners were wholesale dealers of cloaks and suits, and delivered certain garments to the bankrupt pursuant to an agreement entered into on August 31, 1921. The petitioners assert these goods were delivered on consignment, whereas the trustee declares that there was a sale of the goods, and that the petitioners must share their loss with the other creditors. About August 31, 1921, the bankrupt called at the petitioners' place of business and stated that he desired to purchase cloaks and suits. Their sales manager refused to sell, but suggested that the petitioners might be willing to let him have them on consignment, and that this could only be done after the credit department of the firm approved. After some negotiations an agreement was entered into whereby it was provided that the petitioners would deliver "on memorandum or consignment" such goods as might be thereafter agreed upon. It reserved the right to demand the return of the merchandise consigned upon Monday of any week, and, in case the bankrupt failed to return it, the petitioners had the option to accept in lieu thereof payment at the rate specified in the invoices which accompanied the goods. Title to the goods was to remain in the petitioners until they exercised their option to accept payment and charge the goods to the bankrupt. The bankrupt agreed to keep a separate consignment or memorandum book of the merchandise, and a separate record of the consigned merchandise disposed of, and a separate account of the moneys received from the consigned merchandise to which the petitioners should have access at any time. It provided that the moneys received by the bankrupt upon the disposal of any of the consigned merchandise was to be held in trust for the petitioners, and to be turned over to them on Monday of each week. In the event of the failure of the bankrupt to turn over to the petitioners either the consigned merchandise or the identical proceeds thereof he was adjudged to be guilty of conversion. The bankrupt agreed to carry insurance upon the consigned merchandise. The invoices accompanying the goods delivered pursuant to the agreement were to indicate that the goods were delivered on consignment only.

The special master reported that certain cloaks and suits were delivered pursuant to this agreement, but denied the right of the petitioners to reclaim the goods for the reason that he held this was a collusive agreement between the parties made and carried out with the exclusive idea of protecting the petitioners in case of bankruptcy so that they would receive an unfair advantage to the detriment of the other creditors. The district judge confirmed this result, holding that to rule otherwise would enable the peti-

tioners to obtain a preference over other creditors of the bankrupt.

[2] We think the agreement of August 31, 1921, created a mere bailment, and title to the goods remained in the petitioners. Unless the agreement was made in bad faith for the purpose of defrauding other creditors, the petitioners should succeed in their present application. The effect of similar agreements when entered into in good faith have been upheld. Ludvigh v. American Woolen Co., 231 U. S. 522, 34 S. Ct. 161, 53 L. Ed. 345; In re Cattus, 183 F. 733, 106 C. C. A. 171. A trustee in bankruptcy does not stand in the position of an innocent purchaser, but must take the bankrupt's property "as the debtor had it at the time of the petition, subject to all valid claims, liens and equities." Zartman v. First Nat. Bank, 216 U. S. 134, 30 S. Ct. 368, 54 L. Ed. 418; Matter of Wright-Dana Hardware Co. (D. C.) 207 F. 636.

[3] The agreement at bar shows an intention that title should remain in the petitioners. The provision requiring the return of the goods upon Monday of any week or, in lieu thereof, of money which was optional with the petitioners, required that, if money was paid, it would be the invoice price. It was agreed that title should remain in petitioners until the option of the petitioners to accept cash was exercised. Records were to be kept showing the account between the parties which were to be available on Monday of every week. It thus appears that a bailment of the merchandise was provided for with the option in the petitioners to convert it into an actual sale on each Monday. Guss v. Nelson, 200 U. S. 302, 26 S. Ct. 260, 50 L. Ed. 489; Sturm v. Boker, 150 U. S. 312, 14 S. Ct. 99, 37 L. Ed. 1093; In re Schindler (D. C.) 158 F. 458. The fact that the agreement failed to provide that the petitioners should set the price at which the bankrupt should dispose of the goods does not change the character of the bailment. Where a bailment exists for the purpose of permitting the bailee to dispose of the very property, the fact that the bailor permits the bailee to retain for his compensation whatever he might obtain over and above the agreed price does not destroy the existence of the bailment. This permitted the bankrupt to fix the selling price and retain the difference between the invoice price to be paid on the accounting and the selling price as compensation for his insurance, commissions or other expenses. It does not constitute a contract or agreement of sale. In

re Columbus Buggy Co., 143 F. 859, 74 C. C. A. 611. As was stated by this court in Taylor v. Fram, 252 F. 465, 164 C. C. A. 389, if the agreement was made in good faith, and if the business was carried on in accordance with it, there is no doubt that such bailment is lawful and may not be attacked in the event of bankruptcy. There we said:

"There are numerous cases which may be cited to show that such an agreement creates a bailment, and not a sale, and that the bailor is at liberty at any time to retake his merchandise, irrespective of whether bankruptcy proceedings intervene or whether the debtor is solvent or not. All this we concede, and no citation of authorities is necessary.

"But the above doctrine only applies where the agreement is entered into in good faith, and without intent to hinder, delay, or defraud creditors."

[4] Taking the agreement in question at its face value, it clearly created a bailment of the goods sought to be reclaimed, and under its terms the trustee could take no title to the goods for the benefit of other creditors. As above quoted, however, the question is presented as to the good faith and whether the parties executed it with the intention of carrying out its provisions or merely as a cloak covering a transaction which was, in point of fact, a sale. The petitioner seeks to recover 117 garments, 38 of which have not been identified as being in possession of the trustee. As to the other 89, we think they have been identified by the petitioners.

It appears that the bankrupt and the petitioners' sales manager picked out the garments as stock to be delivered to the bankrupt under the consignment agreement. The sales manager made memoranda of these garments as they were selected, and thereafter invoices of the garments were prepared which were checked by the sales manager against his memorandum and found to be accurate. The goods were bundled up and taken to the packing room. On each day that such a selection of garments was made delivery of merchandise was made to the bankrupt, and either he or one of his employees signed for these deliveries. After the bankruptcy proceedings were instituted the petitioners' sales manager went to the bankrupt's place of business, and with the representative of the receiver identified the 89 garments mentioned. His method of identification was by earmarks of style, and this he satisfactorily explains. He

was aided in his identification by the fact that the garments contained the petitioners' sales numbers, and they were checked against the list of garments consigned. The sales manager's memorandum of the goods found at the bankrupt's place of business show garments with the style numbers and prices thereon as per the invoices.

[5, 6] The garments appearing upon the invoices were accounted for by the bankrupt in his weekly accountings. The receipts for the deliveries were given, signed by the bankrupt or his employees, and the garments in question were plainly stated thereon. The fact that the petitioners may have suspected the financial responsibility of the bankrupt does not affect the character of the agreement, unless, of course, the agreement was collusive. A prudent merchant will protect his interests in case he has doubt as to the financial responsibility of the purchaser of the goods, otherwise there would be no occasion for chattel mortgages or conditional bills of sale. If it be true that the petitioners did question the financial responsibility of the bankrupt, a fair inference would be that they intended the transaction to be a bailment rather than a sale. Nor can the petitioners be criticized, as was done by the special master, that the agreement "bears the earmarks of being formulated by a person well versed in the law." Protection of this character will not affect the validity of the agreement. A better test for the good faith of the agreement is found in ascertaining how the parties carried out the terms of the contract. If they adhered to the agreement and performed its terms, then it will be presumed that at the time of making it they intended it to have the force and effect which it purports to have. If, on the other hand, they ignored it, and, in violation of its terms, treated the deliveries of goods as actual sales, then it may be presumed that the agreement was never intended to have the effect which it purports to have, but was a mere cloak intended to conceal an actual sale.

[7-9] Testing the performance of the covenants of the agreement, we find that the petitioners were under the duty of invoicing the consignments to the bankrupt, and clearly indicated the nature of the goods, the price of the goods, and that the merchandise was sent on consignment only. The bankrupt kept separate records of the consigned merchandise, and accounted to the petitioners on Monday of each week for moneys received during the preceding week. The trustee did not offer the books of the bankrupt, but the bankrupt did give testimony which justifies the claim of the petitioners that this provision of the agreement was met. The bankrupt did not provide insurance as the agreements required, but the failure to procure insurance might well be consistent with the ownership of the property in the petitioners. His failure to secure insurance will not justify the inference that he regarded himself as having title. The unit price of each garment as well as the total is shown on the invoices, and they bear the phrase "consigned to Walter Klein, 79 Division street, City," as well as "terms Net Cash Acct'g Wkly Consignment for 2 Wks," and "these goods shipped on consignment for a period of two weeks and at the end of two weeks Walter Klein is to return to Kaplan Bros., all merchandise or its equivalent." The weekly statements rendered by the bankrupt to the petitioners covered the weeks of September 25, October 2, October 9, October 16, October 23, October 30, and November 6. They show the garments disposed of during these weeks and that the payments made were in the exact amount at which the garments were invoiced. The payments were not made in round sums as might be the case if the bankrupt were making payments on an open account. Taylor v. Fram, supra. Thus there was strict compliance by the bankrupt with the accounting provisions of the agreement. It indicates the performance of the duty to account to the petitioners for the proceeds realized upon the sale. The trustee had possession of the books at the time of the hearing before the master, but they were not produced. The record is barren as to what they contain, except such testimony as is given by the bankrupt. He said that the stock book contained the entry showing that the garments came from the petitioners; that upon selling the consigned merchandise he made out a sales slip, and thereafter entered the merchandise in his books from the sales slip. He made a notation in the stock book showing that the particular article had been sold, and in this way he was able to tell how many cloaks and suits were sold which he had bought from the petitioners. At the end of each week he prepared from the entries thus made the statements which he rendered to the petitioners, showing the goods disposed of during the week and accompanying that statement with his check. The fact that when the receiver took possession and the petitioners' sales manager went

over to identify the goods they were found in various parts of the store is not important. The goods might have been mingled with others the last days of the bankrupt's business or by employees of the receiver. The failure to place them in a separate location in the store, of itself, would not defeat the petitioners' claims. The petitioners owed no duty to other creditors to give notice that the consigned goods were not the bankrupt's own property. As to that we said in Taylor v. Fram, supra:

"We know of no rule of law which makes it incumbent upon one who receives goods upon consignment to sell that he should advertise the fact of his agency to his customers; and we do not attach any importance to the nondisclosure by the bankrupt that he received the goods in his capacity as an agent."

See, also, Greey v. Dockendorff, 231 U. S. 513, 34 S. Ct. 166, 58 L. Ed. 339; Ludvigh v. American Woolen Co., 231 U. S. 522, 34 S. Ct. 161, 58 L. Ed. 345.

The record is barren of any proof that any other creditor extended credit upon reliance of title to these goods in the bankrupt. The mingling of the goods, if they were so mingled, created no estoppel against the petitioners, and is not inconsistent with their property rights therein. We think the contract thus entered into was performed by both parties, and this performance indicates the good faith of the parties thereto and the character of the agreement as evidencing a contract of bailment and not a scheme to conceal a sale.

[10] The petitioners called the bankrupt as a witness, and, on direct examination, he was permitted to answer questions as to his carrying out the terms of this contract. Upon cross-examination he was interrogated by counsel for the appellee as to these matters, and the referee ruled out every question asked by the respondent's counsel tending to show lack of good faith in the performance of the contract. The respondent should have been permitted to establish by testimony that the terms of the contract were not carried out either by cross-examination of this witness or by any independent proof that he might have to offer. An opportunity to further examine this witness or offer independent proof will be afforded to the respondent.

The order is reversed and the cause remanded to the District Court, with the directions that the trustee may, if so advised, examine the witness further or submit any proof that he may have tending to show the nonfulfillment of the terms of the contract.

Ordered accordingly.