## BEACON TRUST CO. v. DOLAN.

## In re JAMES MILLAR CO.

Circuit Court of Appeals, First Circuit.
June 28, 1928.

No. 2201.

1. Bankruptcy ⬳188(3)—Whether creditor has equitable lien on assets of bankrupt must be determined by law of state.

Whether a bank, creditor of bankrupt, has an equitable lien on assets of bankrupt estate, must be determined by the law of the state.

2. Bankruptcy ⬳188(3)—Equitable lien on bankrupt's assets is recognized in Massachusetts.

An equitable lien on assets of bankrupt is recognized by the decisions of the Supreme Judicial Court of Massachusetts.

3. Bankruptcy ⬳163, 175—Bank's loan on security of unfinished shoes in different lots, identified by production sheets, which shoes it took possession of before bankruptcy, held not voidable transfer, nor preference.

Where a bank in good faith made a loan on the security of shoes in the course of manufacture, which belonged to different lots, which were identified by production tags, and where, just preceding bankruptcy, it took possession of such shoes through the superintendent of the bankrupt company, whom it constituted its agent for the purpose, held, transfer was not voidable, there being no intent to defraud, nor did it create a preference being made for a present consideration and without depletion of bankrupt estate.

4. Bankruptcy ⬳188(3)—Bank, making loan on security of shoes in course of manufacture, held entitled to preferred claim on proceeds thereof.

Where bank made loan on security of unfinished shoes in process of manufacture belonging to different lots, identified by production sheets, and before bankruptcy of borrower took possession of such shoes by borrower's superintendent as its agent, held, bank was entitled to preferred claim to proceeds of shoes when sold by receiver in bankruptcy.

Appeal from the District Court of the United States for the District of Massachusetts; James Arnold Lowell, Judge.

In the matter of the bankruptcy of James Millar Company, Thomas F. Dolan, trustee. From an order of District Court, affirming a ruling of the referee denying claim of preference by the Beacon Trust Company, claimant appeals. Order reversed, and case remanded.

Lee M. Friedman, of Boston, Mass. (Percy A. Atherton and Friedman, Atherton, King & Turner, all of Boston, Mass., on the brief), for appellant.

John M. Maloney, of Boston, Mass., for appellee.

Before BINGHAM and JOHNSON, Circuit Judges, and HALE, District Judge.

JOHNSON, Circuit Judge. This is a petition to review the judgment of the District Court of the United States for the District of Massachusetts, affirming the ruling of the referee in bankruptcy, denying the claim of the petitioner to certain funds and property in the possession of the trustee of the bankrupt.

The facts as found by the referee, so far as material, are as follows:

The bankrupt, James Millar Company, had from time to time made loans at the Beacon Trust Company, the petitioner here, for which it gave its promissory notes, secured by an assignment of accounts receivable. When a loan was made, the bankrupt provided the bank with duplicate invoices or bills on which there was an assignment, and when these accounts were paid to the bankrupt it turned the money it received over to the bank.

On February 18, 1926, the bankrupt needed money to meet its pay roll. It had no actual accounts to be assigned, but did have orders which it was to fill. The bankrupt had in process of manufacture shoes to fill these orders, and applied to the bank for a loan, offering as security a list of these unfilled orders shown upon production sheets, containing, with other data, a list of the lots of shoes for which an order had been given. Each of these lots, as it was being made up in the process of manufacture, had attached a tag, or tags, with an identifying number, which number was entered on the production sheets, duplicates of which were assigned to the bank. By means of these tags and identification numbers, each lot of shoes and the materials needed to make them could at all times be traced and located in the bankrupt's factory and connected up with its proper production sheets, and only by reference to the production sheets could the shoes manufactured to fill the order be identified. When the order had been completed and the shoes shipped out and billed, the bankrupt assigned a duplicate of the bills rendered to the bank, which was intended as a substitution for the production sheets which had previously been assigned.

March 22, 1926, the bank loaned the bankrupt $11,000; March 23, $6,000; and April 12, $6,000—making a total of $23,000, and the method was followed which has been described. The price of the shoes shown on the production sheets delivered to the bank in connection with said loans aggregated $26,-

174.60. The shoes enumerated on said sheets were subsequently sold by the receiver in bankruptcy and the proceeds of said sale, amounting to $6,253.10, are held subject to the order of the court.

The bankrupt finding itself unable to go on further with the business without more money, and the bank evidently being unwilling to furnish the same, its counsel prepared a letter, signed by the bank and delivered to the superintendent of the bankrupt, directing him to take possession, as agent of the bank, of shoes pledged to secure the bank loans, and which "had been already set aside and tagged." This letter was delivered to the superintendent of the bankrupt at the bankrupt's factory on the morning of April 15, 1926, and on the same afternoon an involuntary petition in bankruptcy was filed by the bankrupt. Counsel for the bank acted also as counsel for the petitioning creditors.

The referee has found that the statement in the letter of instructions to the superintendent to take possession of the shoes that "had already been set aside and tagged" was erroneous, and that the superintendent did not tag finished shoes, but had his subordinates mark with tags certain unfinished shoes with the initials of the bank; that the only thing the bank did to get possession of these disputed shoes was to direct the superintendent to take possession of them, and the tagging of the unfinished shoes was started about 5 hours before the petition in bankruptcy was filed.

The referee has further found that the bank made the loans to the bankrupt "in good faith and in the belief at the time that it was to secure some kind of a lien on these unfinished shoes," that the bank acquired no lien by the original transaction and "was not benefitted by anything that happened on the day of bankruptcy," and that no lien was created by the original transaction, which did not constitute a mortgage or a pledge.

The findings and ruling of the referee were affirmed by the District Court.

The errors assigned are, in substance, that the court erred in failing to find that the petitioner had an equitable lien on unfinished shoes, and that the court erred in failing to establish petitioner's right to the sum of $6,253.10 realized from their sale, together with any interest that has accrued thereon.

The bank contends that it had an equitable lien upon the material to be used in manufacturing the shoes to fill the orders which

were assigned to it. The record discloses, and the production sheets, which are exhibits in the case, show that all of this material bore an identifying number, which connected it up with the particular lot of shoes in the manufacture of which it was to be used, and the referee has so found. The referee has also found that the loans in question were made by the bank in good faith and believing that it secured a lien upon the unfinished shoes.

[1] Whether the bank secured any equitable lien by what was done is determined by the law of Massachusetts. See Thompson v. Fairbanks, 196 U. S. 516, 522, 25 S. Ct. 306, 49 L. Ed. 577; Hiscock v. Varick Bank of New York, 206 U. S. 28, 38, 27 S. Ct. 681, 51 L. Ed. 945; In re Robert Jenkins Corporation (C. C. A.) 17 F.(2d) 555.

[2] An equitable lien is recognized under the decisions of the Supreme Judicial Court of Massachusetts. In Westall v. Wood, 212 Mass. 540, 99 N. E. 325, the defendant had executed to the plaintiff a mortgage upon real estate for money loaned by the plaintiff for the purchase of land and the erection of a building thereon, and obtained from the plaintiff an order to buy materials for the erection of the building. The plaintiff received an assurance from the defendant that the materials purchased should be used in the erection of a building on the mortgaged premises. It was agreed that the money loaned to purchase the materials should constitute a part of the consideration of the mortgage, but there was no specific agreement that a lien should attach to the materials. The material was delivered upon the land, but later the defendant removed a large part of it which he claimed to hold as his own. The court said, at page 544 (99 N. E. 325):

"But an equitable lien does not of necessity rest exclusively upon an express agreement. It may arise from circumstances of such nature as to require the presumption upon general considerations of justice as between those conducting commercial transactions according to a reasonable standard of integrity that an equitable lien was meant. Equity looks at the substance, and not at the form. If the arrangement between the parties, interpreted in the light of the conditions in which they were placed, indicates a contemporaneous intention to adjust their rights upon a basis which can be established only by resort to the equitable principle of lien or pledge, then, in the absence of an intervening adversary interest, such an intent will be executed in chancery."

This statement is supported by citation of authorities, among which is Hurley v. Atchison, T. & S. F. R. Co., 213 U. S. 126, 29 S. Ct. 466, 53 L. Ed. 729. The court in Westall v. Wood, supra, there held that, even though the understanding between the parties was inartificially expressed, "it ought to be treated in a chancery court as creating an equitable lien, in order to effectuate the aim of the parties and to prevent the perpetration of a fraud"—citing Sexton v. Kessler & Co., 225 U. S. 90, 96, 97, 32 S. Ct. 657, 56 L. Ed. 995.

In Hurley v. Atchison, T. & S. F. R. Co., supra, the lessee of certain coal mines had entered into an arrangement with the railway company to furnish it coal, the amount so furnished to be paid for upon the 15th day of each month. The lessee, the coal company, became embarrassed and unable to meet its pay rolls, so that as a result it might not be able to mine or deliver the coal which it had agreed to deliver, and which the railway company required for its daily consumption. The railway company agreed to advance money for coal to be mined and delivered to it. The court found that this arrangement was so intimately and vitally related to the original contract that it was not intended to be interpreted independent and separate from it, and said, at page 134 (29 S. Ct. 469):

"We think the inevitable meaning of the new arrangement, interpreted in the light of the conditions surrounding the parties and as necessarily intended by them, was to pledge a sufficient amount of coal after it should be mined as security for the payment of advances made. This result is not expressed in the conventional form of a mortgage or pledge, but the method of producing it was devised for the purpose of acquiring the needed money by the coal company and of furnishing security for its repayment. If the parties intended the arrangement to be one for borrowing and securing the repayment of money, we ought, as between them, to so regard it and treat it as creating an equitable charge or lien, however inartificially it may have been expressed."

It found and ruled that the agreement that the coal to be mined should be delivered was, "from an equitable standpoint to be considered as a pledge of the unmined coal to the extent of the advancement. The equitable rights of the parties were not changed by the commencement of bankruptcy proceedings. All obligations of a legal and equitable nature remained undisturbed thereby."

In Re Interborough Consol. Corporation (C. C. A. 2d Circuit) 288 F. 334, 32 A. L. R. 932, the following statement is made in regard to the creation of an equitable lien:

"A contract whereby a contracting party sufficiently indicates an intention to make some particular property or fund which it describes a security for a debt or other obligations creates an equitable lien on the property so indicated. Ingersoll v. Coram, 211 U. S. 335, 368, 29 S. Ct. 92, 53 L. Ed. 208. A contract which shows an intention to charge a particular property therein identified with an obligation creates an equitable lien thereon. Hauselt v. Harrison, 105 U. S. 401, 26 L. Ed. 1075; Gregory v. Morris, 96 U. S. 619, 24 L. Ed. 740. And if a party by agreement creates a charge or claim in the nature of a lien on property of which he is the owner or in possession, a court of equity will establish and enforce it, not only against the party who stipulated to give it, but also against third persons who are either volunteers, or take with notice. Walker v. Brown, 165 U. S. 654, 664, 17 S. Ct. 453, 41 L. Ed. 865."

See, also, Root Manufacturing Co. v. Johnson, 219 F. 397, C. C. A. Seventh Circuit.

[3] There is no doubt about the intention of the parties in the present case. The loans were made by the bank on the security of the unfinished shoes then in process of manufacture and which belonged to different lots which were identified upon the production sheets. There was no intent to defraud, and the referee has so found. Nor was a preference created as a present consideration was advanced at the time the security was taken. The bank, through the superintendent of the bankrupt, whom it constituted its agent for the purpose, had taken possession of these unfinished shoes before the petition in bankruptcy had been filed or any adverse rights created. Although the transfer to the bank took place within four months of the bankruptcy proceedings, it is not thereby rendered voidable, because it was not made with intent to defraud, nor did it create any preference, but was made for a present consideration and the bankrupt estate was not depleted thereby.

In Sexton v. Kessler, 225 U. S. 90, 32 S. Ct. 657, 56 L. Ed. 995; Van Iderstine v. National Discount Co., 227 U. S. 575, 33 S. Ct. 343, 57 L. Ed. 652, and Greey v. Dockendorff, 231 U. S. 513, 34 S. Ct. 166, 58 L. Ed. 339, equitable liens were sustained, and these decisions have been followed in this circuit in Massachusetts Trust Co. v. Mac-

Pherson (C. C. A.) 1 F.(2d) 769; In re Robert Jenkins Corporation (C. C. A.) 17 F.(2d) 555; Crosby v. Packer (C. C. A.) 22 F.(2d) 611.

[4] There is no controversy about the facts in the present case, and the evidence is clear and convincing that the loans made by the bank supplied the money with which to pay the pay rolls of operatives for the work of assembling these parts of unfinished shoes and making the finished shoes for which orders had been taken. There was a sufficient identification by the production sheets of the parts of these unfinished shoes.

The order of the District Court is reversed, and the case is remanded to that court for further action not inconsistent with this opinion. The petitioner recovers costs in this court.