## SPENCER v. HIRAM WALKER & SONS GRAIN CORPORATION, LIMITED.

### No. 8130.

Circuit Court of Appeals, Sixth Circuit.

May 11, 1940.

Max Kahn, of Detroit, Mich., for appellant.

Sydney A. Jacobs, of Detroit, Mich. (Cook, Smith, Jacobs & Beake, of Detroit, Mich., on the brief), for appellee.

Before HICKS, SIMONS, and HAMILTON, Circuit Judges.

HICKS, Circuit Judge.

The Van Arman Cereal Company, herein called Van Arman, a Michigan corporation, prior to bankruptcy was engaged in processing corn grits into beer flakes used in brewing. On August 11, 1937, an involuntary petition in bankruptcy was filed against it; adjudication followed on August 23, and appellant was appointed trustee.

Appellant sought by bill in equity to set aside as preferences certain assignments of accounts receivable made by Van Arman to appellee, Hiram Walker & Sons Grain Corporation, Ltd., herein called Walker, and to recover certain moneys collected thereon.

Appellant also sought to recover moneys paid by Van Arman to Walker between April 11, 1937, and August 11, 1937, and to have a decree reassigning to him all accounts receivable assigned by Van Arman to Walker between those dates, upon the ground that the moneys were paid and the accounts were assigned with intent to hinder, delay and defraud the unsecured creditors of the bankrupt in violation of Sec. 67, sub. e, of the Bankruptcy Act of 1898, as amended, 11 U.S.C.A. § 107, sub. e, and of the Michigan Uniform Fraudulent Conveyance Act, Sec. 13392 et seq., Compiled Laws of 1929. As the case is presented, appellant has limited its claim to $35,681.28 which was paid by the bankrupt in the months of July and August, 1937.

The court found that in the latter part of 1936 Van Arman had a contract with the National Cereal Products Company of Chicago, herein called Products Company, whereby the latter agreed to purchase the entire output of beer flakes manufactured by Van Arman; that Van Arman did not have sufficient funds to purchase the grits out of which the flakes were to be processed; that Bailey and Cornell, President and General Manager, respectively, of Van Arman, called upon Burns, agent for Walker, and sought to buy grits upon credit; that Burns refused to sell upon open account; that Bailey and Cornell showed him an audit made by certified public accountants and a balance sheet indicating that Van Arman had assets of more than $150,000 in excess of liabilities and that the Products Company had a good credit rating.

The court found that it was agreed between Bailey and Cornell for Van Arman and Burns for Walker, that Walker would furnish grits to Van Arman for processing, with the understanding that the grain either as grits or as beer flakes would remain the property of Walker and that Van Arman would instruct the Products Company to remit all payments directly to Walker and that thereupon Walker started supplying Van Arman with grain. The court did not specifically so find but the fact is, as testified to by both Bailey and Burns, that it was agreed between them that the accounts receivable from the Products Company were to belong to Walker.

Van Arman notified the Products Company of this arrangement and in substantially all of the invoices sent to the Products Company by Van Arman the Products Company was directed to remit to Walker. The Products Company carried out these instructions except in a very few cases until March, 1937. Van Arman reported daily to Walker as to how much grain and finished product it had on hand and sent to Walker a memorandum copy of each invoice which went to the Products Company. It also carried insurance upon the grain shipped to it by Walker with a loss payable clause to Walker.

The court found that in early March, 1937, Van Arman cancelled its contract with the Products Company, and proposed to sell direct to breweries but that it could not do this unless Walker continued to furnish grain to Van Arman and continued to accept the assignment of accounts receivable from the breweries just as it had

from the Products Company; that Burns on behalf of Walker agreed to this arrangement provided that payments be made by purchasers direct to Van Arman, and that Van Arman would in turn remit to Walker. Van Arman's board of directors approved this plan in substance by a resolution on March 12, 1937, to the effect that Van Arman would deposit all drafts received from sales to the credit of Walker in the National Bank of Detroit which would in turn remit the proceeds direct to Walker.

Shortly after March 12, Bailey informed Burns that Van Arman had previously assigned to the bank its accounts receivable as security for the loan, whereupon it was agreed that the assignment to Walker was to be subject to the assignment to the bank. Van Arman and Walker continued to transact business just as they did when the Products Company contract was in force, except that after Van Arman commenced to sell to the breweries, if its officers desired to retain a portion of a remittance for a shipment, they would procure the authority of Burns to do so.

On June 24, 1937, it appeared that substantially all the raw material processed by Van Arman and all of the money necessary to meet its pay rolls was coming from Walker and that Van Arman was indebted to Walker in a large sum, whereupon Van Arman and Walker agreed that Walker should have a representative audit the books and watch the operations of Van Arman. Walker continued to furnish grain on the old basis until about July 20, when it ceased altogether and notified Van Arman's debtors whose accounts had been assigned to Walker to make payment direct to Walker.

The court did not make any finding upon the matter but the fact is that on June 26, 1937, Van Arman executed a written assignment to Walker of all its receivables and moneys payable thereon. However, this instrument shows upon its face that it was executed as of March 12, 1937, and in confirmation of the original oral agreement between Van Arman and Walker in December, 1936, and of the resolution of March 12, 1937.

 We find no reason to disagree with the findings of fact. It results that there was no preferential transfer by Van Arman to Walker of accounts receivable within the contemplation of Chapter VI, Sec. 60 of the Bankruptcy Act, 11 U.S.C.A. § 96. It is well settled that a parol assign-

ment of choses in action for the purpose of security is valid in Michigan. Union Trust Co. v. Bulkeley, 6 Cir., 150 F. 510, 517; In re United Fuel & Supply Co., 250 Mich. 325, 230 N.W. 164. This assignment was made in December before the commencement of the four months' period on April 11, 1937. Van Arman was not insolvent at the time it was made, nor does it clearly appear that it was insolvent when the resolution of March 12 was adopted. Moreover, it may not be said that Walker had reasonable cause to believe (Bankr.Act, Sec. 60, sub. b) that taking the assignments of accounts receivable would effect a preference. The estate of the bankrupt was not depleted thereby. In re Kerlin, 6 Cir., 209 F. 42, 44. The supply of grain, without which Van Arman could not have continued in business at all, was the full equivalent of the assigned accounts. See Greey v. Dockendorff, 231 U.S. 513, 34 S.Ct. 166, 58 L.Ed. 339; see Vol. I, Collier on Bankruptcy, 1940 Ed., Sec. 3.202, p. 425 and cited cases.

It is urged that the prior assignment by Van Arman of its accounts receivable to the National Bank of Detroit divested Van Arman of title thereto and that the subsequent assignment to Walker was void because Van Arman had nothing to assign. The point is without merit. The assignment to the bank was qualified. It was made as security for the payment of loans, the loans were discharged, the accounts receivable were left intact, and the assignment to Walker was left unincumbered and enforceable.

Finally, it is urged that all transfers of accounts receivable after July 1, 1937, constituted fraudulent conveyances within the meaning of the Michigan statute above cited. The court found that the assignments of the accounts receivable were in good faith and for a present consideration and "did not hinder, delay or defraud creditors." We do not think that the evidence of transactions after July 1 established fraud upon the part of Van Arman by that quantum of proof which the law requires.

Appellant's contention here is that after Walker's representatives, by agreement, went into Van Arman's plant about July 1 to audit its books and oversee its operations, Van Arman conceived and undertook to carry out the intention of hindering, delaying and defrauding its creditors and that the representatives of Walker participated therein by appropriating the assets to the satisfaction of its own debt. The difficulty with the proposition is that there is no evidence to indicate a fraudulent intention upon the part of Van Arman. There could be no participation by Walker in a fraud that never existed. The evidence fails to support the conclusion that a common design existed between Van Arman and Walker to defraud creditors. A reasonable inference is that it was Van Arman's purpose to continue in business if it could; while on the other hand, Walker's purpose was to collect its debt in so far as it could.

We have examined the record and find no prejudicial or reversible error therein.

The decree is affirmed.