### In re TURNER.
### No. 14719.

District Court, W. D. Kentucky, at Louisville.
Oct. 1, 1943.

David R. Castleman, of Louisville, Ky., for petitioning creditors.

Ewing L. Hardy, of Louisville, Ky., for respondent.

A. M. Marret, of Louisville, Ky., for First Nat. Bank.

MILLER, District Judge.

Several creditors of George V. Turner, trading as Home Insulation Company, filed these proceedings against him to have him adjudicated an involuntary bankrupt. The acts of bankruptcy relied upon are set out in paragraph 4 of the petition which reads as follows: "Within four months next preceding the filing of this petition the said George V. Turner committed an act of bankruptcy in that he did heretofore, to wit, on or about the 20th day of July, while insolvent, transfer certain valuable real and personal property to one or more of his creditors with intent to prefer such creditors over other creditors; while insolvent and unable to pay his debts as they matured, procured, permitted and suffered the appointment of a Trustee to take charge of his property; and admitted in writing his inability to pay his debts and his willingness to be adjudged a bankrupt."

The respondent has filed an answer denying the allegations of paragraph 4 of the petition. Evidence was heard by the Court on the issues thus presented.

### Findings of Fact.

The respondent, George V. Turner, has been trading and doing business in Louisville, Jefferson County, Kentucky, for about a year last past under the trade name of Home Insulation Company. He is the sole owner of the business. He did not own the real estate used in the operation of the business but he did own equipment which had a value of about $3,500. During the spring and summer of 1943 he encountered financial difficulties. It is admitted by the respondent that at the time of the filing of the petition herein against him on August 19, 1943, he was insolvent. During July 1943 he conferred with his attorney, Ewing L. Hardy, Louisville, Kentucky, with respect to the claims of creditors and a meeting was called which was attended by a majority of his creditors. At this meeting there was a general discussion about the advisability of liquidating the business with the resulting loss, or continuing to operate the business with the hope of realizing more for the creditors in that way. Hardy had prepared for Turner a voluntary petition in bankruptcy which Turner signed and swore to before Hardy as a Notary Public on July 27, 1943. This petition with the accompanying schedules was placed by Turner in Hardy's possession, but was not to be filed by Hardy until a later time when and if it was decided that that course would be followed. The petition was not filed. At the creditors' meeting it was decided that for the time being at least Turner would continue to operate the business, and that Turner and his wife would convey to the Kentucky Title Trust Company real estate owned by them jointly with remainder to the survivor and occupied by Turner and his wife as their home. This property had been previously purchased for $8,250. The Kentucky Title Trust Company was to hold the property for the benefit of all the creditors of Turner and when possible to make an advantageous sale of same to sell it and divide the proceeds therefrom among all the creditors pro rata in accordance with their respective claims. This was understood by the creditors present at the meeting, but the creditors who did not attend the meeting did not participate in this arrangement. The property was conveyed to the Kentucky Title Trust Company by deed dated July 29, 1943, which deed however did not state the terms of the arrangement hereinabove set out. Neither the furniture, equipment or automobile of the company was transferred to the Kentucky Title Trust Company which acquired no control over these articles in any way.

Turner arranged for the financing of his construction contracts by borrowing money from the First National Bank and by assigning to the bank as security for the loan the payments to which he would be entitled under the particular contracts in question. The money was advanced by the bank as needed to pay for labor and materials and the bank was repaid by receiving payments as made under the construction contracts. On or about June 1, 1943 Turner's indebtedness to the First National Bank under this arrangement was $9,392.60. Subsequent to that time payments were received by the First National Bank under the assigned contracts which reduced the indebtedness to $7,916.

### Conclusions of Law.

The claim of the petitioning creditors that Turner while insolvent transferred certain valuable real and personal property to one or more of his creditors with intent to prefer such creditors over other creditors is not sustained by the evidence. The transfer of the real estate to the Kentucky Title Trust Company was for the purpose of having that company act as trustee for all of the creditors, and under the arrangement no individual creditor

would receive a preference. On the contrary, each creditor would receive his pro rata share from the net proceeds resulting from the sale of the property. The assignment by Turner to the First National Bank of the payments due under his construction contracts and the payments received by the First National Bank as a result of such assignments did not constitute a preference to the First National Bank. A mortgage to secure future advancements is a valid obligation and becomes a mortgage for value as and when the future advancements are made by the creditor. Kentucky Lumber & Mill Work Co. v. Kentucky Title Sav. Bank & Trust Co., 184 Ky. 244, 253, 211 S.W. 765, 5 A.L.R. 391. In addition, the advancement of money by the bank to the contractor and its use in the payment for lumber and materials going into the performance of the construction contract created a valid equitable lien in favor of the bank against the amount remaining unpaid under the construction contract. Movl Const. Co. v. Covington Trust & Banking Co., 258 Ky. 485, 80 S.W. 2d 560; Southern Exchange Bank v. American Surety Co., 284 Ky. 251, 144 S.W.2d 203. Such a transaction and the later payments to the creditor from the property under lien is not a payment on an antecedent debt, does not deplete the bankrupt estate in any way and is not a preference as defined by Sect. 60, sub. a, of the Bankruptcy Act, 11 U.S.C.A. § 96, sub. a. Greey, Trustee v. Dockendorff, 231 U.S. 513, 34 S.Ct. 166, 58 L.Ed. 339; Spencer v. Hiram Walker & Sons Grain Corp., 6 Cir., 112 F. 2d 221; Collier on Bankruptcy, 14th Edition, Sect. 60.19.

■■ The claim of the petitioning creditors that Turner while insolvent procured, permitted and suffered the appointment of a trustee to take charge of his property is not sustained by the evidence. With respect to this act of bankruptcy, the bankruptcy act contemplates the appointment of a trustee for the general purposes of liquidating the entire estate of the debtor, and does not include the appointment of a trustee for a specific purpose dealing only with a part of the estate of the debtor. Standard Accident Ins. Co. v. E. T. Sheftall & Co., 5 Cir., 53 F.2d 40, 41. See Duparquet Huot & Moneuse Co. v. Evans, 297 U.S. 216, 224, 56 S.Ct. 412, 80 L.Ed. 591. The trustee appointed in the present case dealt only with a part of the debtor's property and was not such a general trustee as is contemplated by Section 3, sub. a (5), of the Bankruptcy Act, 11 U.S.C.A. § 21, sub. a (5).

■ The claim of petitioning creditors that Turner admitted in writing his inability to pay his debts and his willingness to be adjudged a bankrupt is not sustained by the evidence. In support of this claim the petitioning creditors called on Turner as a witness in their behalf to produce and file the voluntary petition in bankruptcy prepared for him by his attorney, Ewing L. Hardy, and signed by him on July 27, 1943 but never filed. Objection was made to the introduction in evidence of this document on the grounds that it was a privileged communication between the respondent and his attorney. This objection should be sustained. It appears to be the well settled rule that where legal advice of any kind is sought from a professional legal advisor in his capacity as such the communications relating to that purpose, made in confidence by the client, are at his instance protected from disclosure by himself or by the legal advisor, except where the protection is waived. Wigmore on Evidence, 3rd Ed., Vol. VIII, Sec. 2292. In the same work the author points out in Sec. 2324 that since the privilege is for the protection of the client in his subjective freedom of consultation, it would be defeated if the disclosure of the confidences, though not compellable from the attorney, was still obtainable from the client. Several authorities are therein referred to, holding that under the modern theory the client's own testimony in such a matter is just as privileged as the testimony of the attorney himself. Until such a document has been filed as a part of the court record for which it was prepared it remains a confidential communication between the attorney and his client. 70 Corpus Juris, subject Witnesses, Section 571. Even if the document was properly received in evidence I am nevertheless of the opinion that it is not the type of written instrument contemplated by Section 3 (a) (6) of the Bankruptcy Act. That section evidently refers to a written admission of one's inability to pay his debts and his willingness to be adjudged a bankrupt and which is voluntarily released by the one so signing it. Counsel have not cited any reported decisions dealing with such facts as are here presented. I am of the opinion that as long as such an instrument is only tentatively drafted and executed and is not

744

intended to be released or to be made effective until a later time, and in fact is never so released, its mere existence in the secrecy and confidence of the private papers of the one so signing it is not the public admission of one's inability to pay his debts and willingness to be adjudged bankrupt as is evidently contemplated by the Bankruptcy Act.

Since none of the alleged acts of bankruptcy are sustained by the evidence, it follows that the petition herein will be dismissed.