**RUMSEY MFG. CORP. et al. v. UNITED STATES.**

**In re RUMSEY MFG. CORP.**

**No. 46, Docket 22436.**

United States Court of Appeals Second Circuit.

Reargued May 4, 1953.

Decided Aug. 24, 1953.

Before SWAN, L. HAND and FRANK, Circuit Judges.

SWAN, Circuit Judge.

In December 1946, Rumsey Manufacturing Corporation brought an action for breach of contract against United States Hoffman Machinery Corporation. Rumsey was adjudicated bankrupt in August 1947 and its trustee in bankruptcy, Arthur T. McAvoy, became an additional party plaintiff in the Hoffman action.[1] Thereafter the plaintiffs got a judgment against Hoffman which this court modified in certain respects.[2] Upon remand of the cause a final judgment in the amount of some $94,-000 was obtained in August 1951. With regard to this judgment it will suffice for present purposes to state that the Navy Department had entered into war production contracts with Hoffman and with another prime contractor, Packard Motor Car Co., and these prime contractors had subcontracted some of the work to Rumsey. In the summer of 1945, pursuant to the Contract Settlement Act of 1944,[3] the Government cancelled both prime contracts and the prime contractors cancelled the subcontracts. Rumsey assigned its claims against the prime contractors as security for money borrowed from local banks; the local banks assigned this security to the Federal Reserve Bank of New York which, as fiscal agent of the United States, had guaranteed payment of 90% of the loans to Rumsey. As the United States was obligated to indemnify the prime contractors against judgments Rumsey might recover against them, the result was that the United States would ultimately have to pay the judgment obtained against Hoffman but held the claim on which the judgment was granted as security for unpaid loans of a much larger amount. By petition filed with the Referee to whom the bankruptcy proceedings had been referred, the United States sought an order directing the trustee

Averbach & Bonney, Seneca Falls, N. Y., Albert Averbach, Syracuse, N. Y. (Theodore C. Bonney, Norwich, N. Y., of counsel), for the bankrupt and its trustee, appellants.

Robert M. Brandt, Geneva, N. Y., Cook, Cook & Brandt, for Salone and other wage creditors, appellants.

Warren E. Burger, Asst. Atty. Gen., George L. Grobe, U. S. Atty., and R. Norman Kirchgraber, Asst. U. S. Atty. (Paul A. Sweeney and Cornelius J. Peck, Washington, D. C., Attorneys, Department of Justice, of counsel), for appellee.

1. During the pendency of the instant appeal, Mr. McAvoy died and Mr. Harold J. Van Opdorp was duly appointed trustee in his stead and has been substituted as appellant.

2. Rumsey Mfg. Corp. v. United States Hoffman M. Corp., 2 Cir., 187 F.2d 927. See also McAvoy v. United States, 2 Cir., 178 F.2d 353 which concerns a similar action against Packard Motor Car Co.

3. 41 U.S.C.A. § 101 et seq.

to assign to it the Hoffman judgment and to credit the amount thereof against its claim on Rumsey's unpaid loans. The District Court, overruling the Referee, granted the petition on September 19, 1951. The bankrupt and its trustee appealed.[4]

The assets of the bankrupt estate exclusive of the Hoffman judgment are insufficient to pay in full the claims of wage creditors. Salone and some sixty other wage claimants petitioned the bankruptcy court to set aside said order of September 19, 1951 and expunge the amended proof of claim filed by the United States on January 25, 1949, in which the United States first asserted in the bankruptcy proceedings that it held as security for the bankrupt's loans the assigned claim against Hoffman. By order dated January 7, 1953, the District Court denied their petition, relying upon

our opinion mentioned in note 4, supra. The appeal of the wage creditors and the reargument of the trustee's appeal were consolidated and have been heard together.

The principal question presented by both appeals is whether the United States by originally filing its claim as unsecured had estopped itself from claiming the Hoffman judgment as security for the bankrupt's unpaid notes. The United States filed a timely proof of claim on December 3, 1947, a timely amendment thereto on January 28, 1948, and a second untimely amendment on October 18, 1948.[5] The original proof of claim, and each of these amendments, claimed priority for the debt under 11 U.S.C.A. § 104, sub. a(5), and asserted there were no known set-offs and no security held for it.[6] Not until a third amended proof of claim was filed on January 25, 1949, was

4. An opinion affirming the order was filed November 26, 1952 but upon the trustee's petition for rehearing that opinion was withdrawn and a reargument was granted to be heard with the Salone appeal, which raised a closely related question. Our order granting the trustee's petition reads as follows:

"The petitioner asserts that the final sentence of our opinion handed down on November 26, 1952, is based on a misapprehension of the facts. That sentence reads as follows:

" 'The contention that the United States lost its status as a secured creditor because the amendment of January, 1949, was filed too late might have been presented by an appeal from the order allowing the amendment but such order cannot be attacked collaterally.'

"The petitioner is right. That sentence should be stricken, since it now appears that the amendment was filed by the United States without obtaining any order of the Court. Consequently the petitioners urge us to pass upon the validity of the late amendment and to determine whether the timely proof of claim which stated that the creditor had no security for its claim was an irrevocable election of remedies amounting to a surrender of the security. The wage claimants who seek to intervene have an appeal pending, and assert that their appeal presents the same questions of law as does the petition for rehearing, and that these questions have been decided adversely to them by the District Judge in reliance upon our opinion of November 26. In these circumstances we think it proper to grant

the petition for rehearing, to withdraw our former opinion, and to direct that the two appeals be argued together when the wage claimants' appeal is reached for argument. It is so ordered."

5. The six months period for filing claims expired March 29, 1948.

6. The original proof of claim contained the following provisions, each of which was repeated in substantially identical form in the first and second amendments:

"5. That there are no known set-offs or established counterclaims to the said debt.

"6. That the United States does not hold, and has not, nor has any person by its order or for its use, had or received any security or securities for the said debt.

\* \* \* \* \*

"9. That said debt, being due the United States is entitled to priority of payment in accordance with Section 64 (a-5) of the Bankruptcy Act, 11 U.S.C. 104, and Sections 3466 and 3467, as amended, of the Revised Statutes, 31 U.S.C. 191 and 192.

"10. That the filing of this claim is not to be construed as a waiver of the right of the United States, or of any agency or instrumentality thereof, to follow any of the debtor's property or the proceeds thereof, into the hands of whomsoever the same may be, including the receiver or trustee in bankruptcy, or as a waiver of any other claim or right of action or set-off or any other right whatsoever that the United States or any agency or instrumentality thereof has

568

there mention of the assignment of Rumsey's claim against Hoffman as security for Rumsey's bank loans.

■ The appellants contend that having made its election to prove its claim in bankruptcy as an unsecured creditor, without set-offs, but with claimed priority, and no extension of the six months period for filing claims having been obtained, the United States could not thereafter assert that it held security or set-offs for the bankrupt's debt. This contention is based on the erroneous premise that the amendment of January 25, 1949, asserted a new and different claim from that asserted in the original proof of claim. Plainly it did not. The claim of the United States was on the bankrupt's notes. The amendment asserting that the notes were secured by the bankrupt's war contract termination claims did not change the creditor's cause of action. As this court said in Lewith v. Irving Trust Co., 2 Cir., 67 F.2d 855, 856, section 57, sub. n of the Bankruptcy Act, 11 U.S. C.A. § 93, sub. n, does not prevent a creditor who has filed an unsecured claim, from amending it into a secured claim, and asserting his security, after the period for filing has expired.[7] It is true the amendment was disallowed in the Lewith case, but that was because the prior allowance of the creditor's claim as unsecured was *res judicata*, and no adequate cause for reconsideration of this allowance was shown. In the case at bar, however, the bankruptcy court had taken no action on the claim prior to the 1949 amendment. The case upon which the appellants particularly rely, In re O'Gara Coal Co., 7 Cir., 12 F.2d 426, certiorari denied sub nom. Chicago Title & Trust Co. v. Gardner, 271 U.S. 683, 46 S. Ct. 633, 70 L.Ed. 1150, was recognized in our Lewith opinion as "exceptional." It is distinguishable from the case at bar; no similar factual situation is presented here. That the United States did not actually intend the filing of its claim as unsecured to operate as a waiver or surrender of its collateral security is made apparent in paragraph 10 of the proof of claim set out in note 6, supra. But assuming *arguendo* that the attempted reservation in paragraph 10 of "any other right whatsoever" would not be effective to preclude persons interested in the bankrupt estate from acting in reliance on the denial in paragraph 6 that the United States held any security, we pass to a consideration of the question whether the United States should be estopped to assert its security.

■ The appellants contend that the trustee and his attorney, Mr. Averbach, will be prejudiced by allowance of the amendment asserting the security because they have incurred expense and rendered services in prosecuting the Hoffman suit to judgment. There is no finding that they did this in reliance on the denial of security contained in the original and amended proofs of claim. Obviously they could not have so relied when the action against Hoffman was commenced in December 1946, nor at any time prior to the filing of the original proof of claim on December 3, 1947. As early as the summer of 1946, Mr. Averbach knew of Rumsey's assignment of its war contract termination claims and of the interest of the United States therein because he then met with representatives of the local banks and the Federal Reserve Bank to discuss acceptance of Hoffman's offer of settlement. He believed the war contract termination claims were worth more than Rumsey's indebtedness to the banks, but he was amply warned that the United States considered its security inadequate and did not need his services as attorney. Indeed, the United States fought the case on Hoffman's behalf, the United States Attorney and his assistants appearing as Hoffman's attorneys. The trustee and Mr. Averbach could not fail to realize

or may have against the debtor, the receiver, the trustee, or any other person."

7. See in accord, In re Meade Tool & Die Co., 6 Cir., 164 F.2d 228, and cases therein cited. Two other Second Circuit cases are relied upon by the appellants. In re Silk, 55 F.2d 917; In re F. & W. Grand Properties Corporation, 74 F.2d 224. These are obviously distinguishable. In each the secured creditor had filed no proof of claim within the six months period.

that they could contribute nothing beneficial to the bankrupt estate unless they succeeded in collecting from Hoffman and Packard more than the bankrupt's unpaid notes secured by the assignment of its war contract termination claims. On January 28, 1913, eight weeks after the original proof of claim was filed, Mr. Averbach declared in an affidavit that he would look only to the recoveries against Hoffman and Packard and not to other funds of the estate for his fees. His affidavit makes no allusion to any waiver of security by the United States. We must interpret it to mean not merely that his fee was contingent on success in the litigations mentioned but also, since he knew of the assignment to the United States and expected the recoveries against Hoffman and Packard to exceed Rumsey's debt on its notes, that he would look only to such excess for his fees, for it would be most unreasonable to base a contingent fee upon any recovery except upon what the client might recover, i. e., the surplus, if any, above the debt. Accordingly we see no basis for estopping the United States, as against the trustee and his attorney, from amending its proof of claim to assert its security.

■■ Rumsey's assignment of security provided that any payment which the assignor might receive should be delivered in identical form to the assignee and until so delivered should be held in trust for the assignee and not commingled with any funds of the assignor. Absent estoppel, no sound reason has been advanced why the trust thus imposed, before Rumsey's bankruptcy, upon the contract claim against Hoffman should not prevail as against the assignor and the assignor's general creditors. See Greey v. Dockendorff, 231 U.S. 513, 34 S. Ct. 166, 58 L.Ed. 339. The order of September 19, 1951, directing the trustee to assign the Hoffman judgment to the United States and directing the United States to credit the amount thereof against its claim on the bankrupt's unpaid notes, was an appropriate method of enforcing the trust.

■ The appellee contends that the wage earners' appeal must be dismissed because a general creditor has no right to appeal from an order refusing to disallow another creditor's claim unless upon application the trustee has refused to do so and the district court has authorized the creditor to proceed in the trustee's name. Ross v. Dryborough, 2 Cir., 149 F.2d 676 and cases therein cited. Technically, the point is well taken, for the priority accorded wage claimants by section 64, sub. a(2) of the Bankruptcy Act, 11 U.S.C.A. § 104, sub. a(2), should not alter the general rule based on considerations of orderly and efficient administration. But as the wage earners' appeal has, at the trustee's request, been argued with his own, we think it may appropriately be entertained rather than dismissed on the narrow ground that the district court had not authorized the wage creditors to appeal in the trustee's name.

■ On the merits there is nothing to support their appeal. Their petition to the district court alleged that the trustee acted in reliance on the original proof of claim and the first amended proof filed by the United States. Our prior discussion has shown that there was no estoppel in favor of the trustee. The wage claimants' petition does not even allege that they themselves or their attorney relied on the proofs of claim.

Orders affirmed.